## STATE, Respondent, v. MACK GILLUM, Appellant.

[228 Pac. 334.]

CRIMINAL LAW—CONSPIRACY TO SELL INTOXICATING LIQUOR—ACCOMPLICE
—CORROBORATION—SUFFICIENCY OF EVIDENCE.

1. Under C. S., sec. 8957, a conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense charged.

2. C. S., sec. 8957, is a legislative prohibition against a conviction on the uncorroborated testimony of an accomplice, and under this statute one accomplice cannot corroborate another so as to obviate the requirement that there must be corroboration by other than accomplice testimony.

3. The testimony of an accomplice is not merely cumulative where it is properly corroborated, and it is not necessary that there be corroborative evidence concerning every material fact about which the accomplice testified, nor is it necessary that the whole case be proved outside the testimony of the accomplice.

4. The statute permits a conviction upon the testimony of an accomplice, with the limitation that the accomplice be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, but the corroborative evidence must be independent of the testimony of the accomplice and connect or tend to connect the defendant with the crime.

5. *Held,* that the evidence in this case, in itself and without the aid of the testimony of the accomplices, tends to connect the defendant with the commission of the offense charged, and with the testimony of the accomplices is sufficient to support the verdict, under the limitations of C. S., sec. 8957.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge

Judgment of conviction for conspiracy to sell intoxicating liquor. *Affirmed.*

E. P. Barnes and Frawley & Koelsch, for Appellant.

A conviction cannot be had on the testimony of an accomplice, unless he be corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. (C. S., sec. 8957; *State v. Grimmett,* 33 Ida. 203, at 210, 193 Pac. 380; *State v. Whisler,* 32 Ida. 520, at 523, 185 Pac. 845; *Babb v. State* (Okl.), 217 Pac. 1054.)

The corroboration must be upon some material fact or circumstance, and that standing alone and independent of the evidence of the accomplice it must tend to connect the defendant with the commission of the offense. (*State v. Knudtson,* 11 Ida. 524, at 528, 83 Pac. 226.)

An accomplice must be corroborated with respect to the commission of a crime as distinct from the connection of the defendant therewith. (*Ingram v. State,* 78 Tex. Cr. 559, 182 S. W. 290; *Hall v. State,* 52 Tex. Cr. 250, 106 S. W. 379.)

The testimony of one accomplice cannot be accepted as sufficient corroboration of the testimony of another accomplice. (16 C. J., p. 710, par 1453, and cases cited in note 5.)

No general rule can be stated but each case must be governed by its own circumstances, keeping in view the nature of the crime, the character of the accomplice's testimony and the general requirements with respect to corroboration. (16 C. J., p. 712, par. 1458, and cases cited in notes 28 and 29.)

Evidence which merely raises a suspicion that defendant is guilty is not sufficiently corroborative of the testimony of an accomplice to warrant a conviction nor will uncertain or equivocal corroboration suffice. (*People v. Woodcock,* 52 Cal. App. 412, 199 Pac. 565; *McCalla v. State,* 66 Ga. 346.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Respondent.

The evidence corroborating an accomplice must, in order to warrant a conviction, connect or tend to connect the defendant with the crime with which he is charged. (*State v. Bond,* 12 Ida. 424, 86 Pac. 43; 16 C. J., sec. 1434, note 25, p. 701; *State v. Turnbow,* 99 Or. 270, 193 Pac. 485, 195 Pac. 569; *State v. Brake,* 99 Or. 310, 195 Pac. 583.)

Sufficient corroboration of the testimony of an accomplice to warrant a conviction may be furnished by the suspicious conduct of the defendant. (16 C. J., sec. 1441, notes 53 and 57, pp. 706, 707; *People v. McLean,* 45 Cal. 480, 24 Pac. 32; *People v. Solomon,* 125 Cal. xix, 58 Pac. 55; *People v. Ardell,* 135 Cal. xix, 66 Pac. 970; *State v. Turnbow, supra.*)

The strength or credibility of corroborating evidence is for the jury and is sufficient if it tends to connect the defendant with the commission of the crime, even though standing alone it would be entitled to but little weight. (*State v. Smith,* 30 Ida. 337, 164 Pac. 519; *People v. McLean, supra; State v. Brake, supra;* 16 C. J., sec. 1457, p. 711.)

WILLIAM A. LEE, J.—Appellant was jointly informed against with Roy Williams and Charles W. Morris for conspiracy to sell intoxicating liquor. Williams and Morris pleaded guilty to the charge and on a plea of not guilty appellant was tried and convicted by a jury, and from the judgment of conviction thereon this appeal is taken. The only assignment of error made by appellant is that the evidence is insufficient to sustain the verdict of guilty. This assignment specifies the particulars in which the evidence is claimed to be insufficient, all of which specifications are based upon the ground that Williams and Morris, being accomplices, the evidence of these accomplices is insufficiently corroborated under C. S., sec. 8957, which provides:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which

in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.''

Under the common-law rule testimony of an accomplice, although not corroborated, may be sufficient to sustain a conviction. The foregoing statute, which is found in many other states, is a legislative prohibition against a conviction upon the uncorroborated testimony of an accomplice, although the jury might believe such testimony. Under this statute one accomplice cannot corroborate another so as to obviate the requirement that there must be corroboration by other evidence which in itself and without the aid of the testimony of the accomplice, or accomplices, tends to connect the defendant with the commission of the offense. There can be no conviction upon the testimony of accomplices alone, no matter how many there may be, if their testimony is not corroborated by evidence apart from accomplice testimony. (16 C. J., p. 710, sec. 1453, and authorities cited; 1 R. C. L., p. 170, sec. 17; *Powers v. Commonwealth*, 110 Ky. 386, 61 S. W. 735, 63 S. W. 976, 53 L. R. A. 245; *Blakely v. State*, 24 Tex. App. 616, 5 Am. St., 912, 7 S. W. 233.)

It would unduly extend this opinion to attempt a detailed statement of the state's evidence in this case, appellant not having offered any evidence. The alleged crime was committed on June 21, 1921. It appears that the codefendant Morris had been a deputy sheriff of Ada county since January preceding and that his duties consisted principally of acting as bailiff in the district court, he being occasionally called on by the sheriff to do other work. On the day in question Morris was approached by appellant at the sheriff's office and asked if he would accompany him to a place where he thought there was some liquor, appellant agreeing to get more definite information, and later called Morris on the telephone and stated that he had located the liquor and asked Morris to meet him, which Morris did, and the two,

in a car used in connection with the sheriff's office, went to the Smead Dairy ranch in south Boise, where they found one Fred Newman standing in the kitchen door of the house. Morris stated to Newman that he was from the sheriff's office and wanted to search the place, and leaving Newman in charge of appellant proceeded to search the premises, and under the floor found a ten-gallon keg of moonshine liquor and also a wash-boiler with bottles filled with the same kind of liquor. Newman, who seemed to be in charge of the premises, got away, and Morris loaded the liquor and containers into the car, after which he and appellant agreed that they would cache the liquor in the sagebrush on a near-by hill, which was accordingly done. Morris then told appellant he had a meeting to attend in Boise and the two separated, having agreed to meet later in the evening.

Around 11 o'clock P. M., by appointment, Morris and appellant drove to where they had earlier in the evening cached the liquor and placed the same in the car which Morris was driving. Morris testified that on this second trip appellant said that the defendant Williams would meet them and take charge of and sell the liquor. About midnight Williams drove up in a car and told them of a good place to cache the liquor and the three defendants then went to a point about two miles south on the Boise bench where the liquor was buried in the sage-brush underground.

On the following day appellant again went to the sheriff's office and calling Sheriff Agnew to one side the conversation had between the sheriff and appellant, as related by Agnew, is substantially to the effect that appellant said, "If I get you a man that will put you straight on this matter will you go through with it?" and Agnew said, "I certainly will, Mack. I want to get everybody connected with this thing and run it down," and appellant said, "All right, I will get you a man that will put you right on it, the man that took the liquor out away from that place," and the sheriff said, "All right, you get him, that is what I want." Sheriff Agnew further testified that appellant then went away for a while and came back and told him that he had

the party. The sheriff called two of his deputies, Robinson and Driscoll, and the three, with appellant, went to the corner of Fourth and Jefferson Streets, in Boise, where they met the defendant Williams, who was sitting in a car, and appellant said to the officers, "This is the man," when the three officers, with appellant and defendant Williams, went over to the Smead Dairy ranch in south Boise and after looking over the premises the sheriff left Deputy Robinson in charge of the place and he with appellant, Williams and Deputy Driscoll went out on the bench across the New York canal about two miles in a southwesterly direction where, after a brief search, under the instructions of appellant, who frequently would refer to Williams by saying, "Isn't that right, Roy, to go up this way, from what you told me I think you went this way," and Williams would answer, "Yes, I think we did," the cached liquor was found.

From the testimony of Sheriff Agnew it is apparent, and the jury were warranted in finding, that appellant had a more definite and certain knowledge as to where this liquor had been cached than ordinarily could be obtained from a description that either of the other defendants could have given him. From the testimony, with the facts and circumstances, the evidence is sufficient to support the finding of the jury that the statements of the codefendants Morris and Williams with regard to the three of them having cached the liquor about midnight of the preceding day, with an agreement to sell the same, occurred in the manner stated by these two codefendants. While the testimony of the sheriff does not corroborate the testimony of the two accomplices with regard to the agreement of the three that one of them should sell the liquor and the proceeds be divided between them, the liquor having been cached in this manner and at the time of night indicated, is sufficient evidence with the other facts and circumstances to sustain the verdict of guilty.

Furthermore, we think that the testimony of the witness Veatch corroborates the testimony of the accomplices in that

Veatch testified that appellant had been in his office a number of times, that he was handling appellant's oil lands, and when the witness came down to his office one morning he heard that appellant had been arrested and upon meeting appellant said, ''What's the matter, Mack, you get into trouble over $25?'' to which appellant replied, ''You know I wouldn't get into trouble over $25, you know I wouldn't do anything like that,'' after which the witness Veatch said, ''What is this stuff?'' and appellant replied, ''Nothing more than Morris, deputy sheriff, came down to the house and took me over in south Boise to make a raid over there, I went along with Morris, he brought the sheriff's car down to the house and got me and I went over.'' This testimony clearly connects appellant with the raid in which the liquor was seized and placed in the sheriff's car.

That these contraband goods, instead of being returned to the sheriff's office, were cached at the place where they were subsequently recovered by the sheriff on the 22d of June, 1921, is not in dispute. The concealment of this liquor at the time and in the place where it was subsequently found by the sheriff and his deputies shows clearly that the taking possession of the same at the Smead Dairy ranch was not for a lawful purpose, and it is a legitimate inference which the jury were entitled to draw from the facts and circumstances as testified to by Sheriff Agnew and Veatch that it was taken and concealed for the purpose of subsequent sale, as testified to by the accomplices.

No general rule can be stated with respect to the *quantum* of evidence corroborating an accomplice's testimony which is necessary to warrant a conviction; each case must be governed by its own circumstances, keeping in view the nature of the crime, the character of the accomplice's testimony, and the general requirements with respect to corroboration. Where the circumstances point to the guilt of the accused, independent of the accomplice's testimony, such circumstantial evidence may be a sufficient corroboration of the accomplice's testimony to sustain a conviction. It is not necessary that the testimony of an accomplice be corrob-

orated in every detail. Any corroborative evidence legitimately tending to connect the defendant with the commission of a crime may be sufficient to warrant a conviction, although standing by itself it would not be sufficient proof of defendant's guilt. (16 C. J., pp. 711 and 712, secs. 1457, 1458; *State v. Smith,* 30 Ida. 337, 164 Pac. 519; *State v. Grant,* 26 Ida. 189, 140 Pac. 959; *State v. Bond,* 12 Ida. 424, 86 Pac. 43; *State v. Knudtson,* 11 Ida. 524, 83 Pac. 226; *State v. Frisby,* 49 Utah, 227, 162 Pac. 616.)

In *State v. Brake,* 99 Or. 310, 195 Pac. 583, it is said that the statute is in effect a legislative declaration that it is dangerous to permit a conviction upon the uncorroborated testimony of an accomplice, and for that reason the statute provides that juries shall not convict any accused person upon the uncorroborated testimony of an accomplice, even though they might unqualifiedly believe the testimony of such accomplice, but that it is not necessary that there shall be corroborating evidence concerning every material fact as to which the accomplice testified, nor is it necessary that the whole case shall be proved outside of the testimony of the accomplice, for if the statute contained such a requirement, accomplice testimony could never avail anything except as cumulative evidence. The statute permits convictions upon the testimony of an accomplice with the limitation that the accomplice shall be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and hence the corroborative evidence must be independent of the testimony of the accomplice and connect or tend to connect the defendant with the commission of the crime charged.

Applying the principles announced in the foregoing cases to this case we think it cannot be successfully contended that the evidence is insufficient to support the verdict, and it follows that the judgment of the court below should be affirmed, and it is so ordered.

Budge and Dunn, JJ., concur.

WM. E. LEE, Dissenting.—I do not agree with the conclusion reached by the majority that the evidence is sufficient, without the aid of the testimony of the two alleged accomplices, to connect appellant with the crime alleged. Under the statute, C. S., sec. 8957, a conviction cannot be sustained on the uncorroborated testimony of an accomplice. And while it is not necessary that an accomplice be corroborated in every respect, it is necessary that there be corroborating evidence upon some material fact or circumstance, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. (*State. v. Knudtson,* 11 Ida. 524, 83 Pac. 226; *State v. Bond,* 12 Ida. 424, 86 Pac. 43; *State v. Grant,* 26 Ida. 189, 140 Pac. 959; *State v. Smith,* 30 Ida. 337, 164 Pac. 519.)

The information alleged that the appellant and the two codefendants conspired together and agreed to sell "intoxicating liquor for beverage purposes." The object of the alleged agreement or conspiracy is unlawful. (C. S., sec. 2606.) And it is unlawful to conspire to do an unlawful act. (C. S., sec. 8204.) It is elementary that a conspiracy consists of at least three material elements. There must be a combination of two or more persons. There must be an agreement. There must be an unlawful purpose or act to be accomplished, or a lawful purpose to be accomplished by unlawful means. (5 R. C. L. 1065.)

Does the independent evidence tend to show that appellant and the accomplices conspired to commit an unlawful act, to sell intoxicating liquor? For the purpose of this test, we may eliminate from our consideration the testimony of the two accomplices, and examine the testimony of the witnesses Veatch and Agnew to determine if their testimony tends to show that appellant and the accomplices conspired to sell intoxicating liquor.

Veatch asked appellant, "What's the matter . . . ." and appellant said: "Nothing more than Morris, deputy sheriff, came down to the house and took me over in South Boise to make a raid over there. I went along with Morris,

39 Idaho.—30

he brought the sheriff's car down to the house and got me and I went over.'' There is certainly nothing in this testimony that tends to connect appellant with a conspiracy to sell intoxicating liquor.

The most that can be said of Sheriff Agnew's testimony is that appellant asked him, ''If I get you a man that will put you straight on this matter will you go through with it?'' Agnew said he would, and the appellant produced Williams; and appellant and Williams took Agnew and his deputies to a point outside of Boise and assisted in locating a quantity of intoxicating liquor. By his actions it may be surmised that the appellant had been to the spot and knew that the liquor was there. But is this sufficient evidence of the alleged conspiracy? Does it tend to establish an agreement between the appellant and accomplices to sell intoxicating liquor? I think not. It shows a guilty knowledge on the part of appellant concerning the location of the liquor, but it does not relate to a conspiracy to sell. Had the unlawful act, with respect to which they are alleged to have conspired, been the unlawful possession of intoxicating liquor, the corroborating evidence might be sufficient to connect appellant with the commission of the offense.

The majority say that from the testimony of Agnew ''It is apparent, and the jury was warranted in finding, that appellant had more definite and certain knowledge as to where this liquor had been cached than could be obtained from a description that either of the other defendants could have given him.'' Granting all this and conceding even that the evidence shows that appellant assisted in caching the liquor, still where is the corroborating evidence that tends to connect appellant with a conspiracy to sell intoxicating liquor? There is none. In fact, the majority concedes the correctness of this conclusion in saying: ''While the testimony of the sheriff does not corroborate the testimony of the two accomplices with regard to the agreement of the three that one of them should sell the liquor.'' It is the conspiracy to sell with which we are dealing. According to Agnew's testimony, a crime may have been and

doubtless was committed, but it was the crime of possession, if anything, and not a conspiracy to sell. It is true the corroborating evidence may be slight, but it must tend to connect the defendant with the commission of the offense charged, the conspiracy to sell, in this case. The possession of intoxicating liquor is not a material element of the crime of a conspiracy to sell intoxicating liquor. One can sell intoxicating liquor without having it in his possession; one can conspire with others to sell intoxicating liquor without having it in his possession; and the mere possession of intoxicating liquor is neither a necessary element of the crime of selling intoxicating liquor nor of the crime of conspiring with others to sell intoxicating liquor. The statute, C. S., sec. 8957, says that " . . . . the corroboration is not sufficient if it merely shows the commission of the offense. . . . . " The majority in effect holds that corroboration is sufficient which shows the commission of another and different offense. (See 5 R. C. L. 1087.

That the evidence of the two accomplices fully and completely establishes the commission of the crime charged cannot be disputed, but under the statute a conviction cannot be had on the uncorroborated testimony of an accomplice. Being convinced that the corroborating evidence in this case does not tend to connect the appellant with the commission of the offense of a conspiracy to sell intoxicating liquor, I am of the opinion that the judgment should be reversed.