(No. 5989. July 24, 1933.)

STATE, Respondent, v. HARRY ORR, Appellant.

[24 Pac. (2d) 679.]

Latham D. Moore and A. L. Morgan, for Appellant.

454

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

WERNETTE, J.—Appellant, Harry Orr, was convicted of the crime of robbery, and has perfected this appeal from the judgment of conviction.

The facts are as follows: One Thompson D. Matthews was conducting a confectionery store known as the Oriole Nest, adjacent to the campus of the University of Idaho, in the city of Moscow. It was his general custom to check his cash about midnight, then leave for his home with the receipts of the day's business about 12 or 12:30 in the morning. On this occasion, on the morning of October 25, 1932, about 12:20 o'clock A. M., he left his place of business, in company with his clerk, for his residence, carrying with

him approximately $150 in cash. Both were riding in the
front seat of Matthews' car. On the way home Matthews
stopped at the home of the clerk, let him out of the car,
then continued on to his own residence. Before starting
for home Matthews' car was parked close by the confec-
tionery store. Some person concealed himself in the rear
seat of Matthews' Dodge sedan, which he was driving, and
while Matthews was on his way home, and after the clerk
had left the auto at his home, the person who had concealed
himself in the rear of the car, at a place near Matthews'
home, struck Matthews over the head with a blunt instru-
ment of some sort. The blow stunned him, but did not
cause him to become unconscious. Matthews engaged in a
struggle with the party who hit him, during which time
he was again struck over the head rendering him uncon-
scious. At the time of the encounter he was traveling
approximately 45 miles per hour, and when he lost con-
sciousness the car left the highway and collided with a tree
on the parking along the road, badly wrecking the car. The
party who made the assault was thrown with great force
against the back of the front seat so that one side of the
same was considerably bent forward from the force of the
impact. The person making the assault, after the car was
wrecked, succeeded in robbing Matthews of his money,
amounting to approximately $150. Blood stains were there-
after found on the left rear door and the back of the front
seat, and were identified by a professor of bacteriology from
the University of Idaho. The pieces of cloth bearing the
blood stains were removed from the upholstery of the car
and introduced in evidence, indicating that the assailant
was injured in the struggle and collision.

The collision took place very close to the home of a
Mr. Blanchard, an instructor at the University, who im-
mediately upon hearing the crash went to the car, locating
the same through the moaning and groaning of Matthews.
The assailant, however, had already escaped with the money.
Almost immediately after Blanchard reached Matthews'
wrecked car, Clifford Benjamin, a confessed accomplice of

appellant, came driving down the road in the same direction Matthews' car was going at the time of the wreck. Blanchard flagged to Benjamin, who stopped his .car and came to the wreck. Blanchard, in company with Benjamin, while making a casual inspection found a blackjack on the front seat of the wrecked car, close to the body of Matthews. Blanchard and Benjamin then took Matthews to the hospital. About this time a Mr. Richard Storch, in company with Miss Pearl May, came to the wrecked car and saw the blackjack on the front seat. After taking the young lady to her home Mr. Storch returned to the wreck, and in company with Mr. Blanchard again inspected the same, discovering that the blackjack had been removed.

Benjamin and Orr had been associating with each other for some time, and on the day prior to the robbery they went to Troy, Idaho, where they hijacked some beer. On one or more occasions prior to the trip to Troy the proposition of robbing Matthews was discussed between Orr and Benjamin, and during the trip to Troy final plans were made to do the robbing. The blackjack had been in the possession of Orr for some time. Pursuant to the plan, or plot, as agreed upon between Orr and Benjamin, Orr was to get into the rear of Matthews' car and at the opportune time slug Matthews with the blackjack, and take his money. Benjamin was to follow the Matthews car in the car owned by Orr, pick up Orr after the robbery was completed and then both make their escape. Things did not materialize, however, just as was anticipated, as Matthews drove his car so fast through town that Benjamin was not able to follow as closely as was intended. The result being that Blanchard came to the wreck before Benjamin arrived with the Orr car.

After Blanchard and Benjamin took Matthews to the hospital Benjamin returned to the wrecked car and took the blackjack, destroying it by burning the leather and scattering the shot. Upon the same day of the crime both Orr and Benjamin were placed under arrest. Orr was examined by a physician and others and it was found that

he had a large number of abrasions, contusions and scars all over his head, hands, body and legs, the injuries indicating that they had been received within twenty to twenty-four hours.

So as not to unduly lengthen this opinion a more detailed statement of facts will not be made here, but other specific facts of importance, where necessary, will be mentioned.

The appellant has specified a number of assignments of error, which we will dispose of in their order.

The first assignment is to the effect that the court erred in overruling defendant's objection to the testimony of the witness George K. Moody, testifying for the state, and in failing to strike the testimony on motion, as it is claimed that the testimony was incompetent, irrelevant and immaterial, and not proper rebuttal.

It appears from the evidence that certain keys were taken from Matthews during the robbery, also a money bag containing the money, which bag had a metallic zipper. The defense produced two witnesses, who, two days prior to the commencement of the trial, went to an ash pile immediately back of the apartment in which the accomplice Benjamin and his family were living at the time of the alleged crime, and there sifted the ashes, finding the keys which were taken from Matthews, also a metallic zipper which probably came from the money bag. Both keys and zipper indicated that they had been in a fire. The witnesses for the defense, who testified as to the finding of the keys and zipper, were sent there at the direction of appellant's attorney and it was suggested to them that it would be better not to inform the prosecuting attorney as to their find. After the introduction of this testimony on the part of appellant, the witness Moody was placed on the stand. He gave testimony with regard to his going to the apartment of Benjamin on the late evening of the day of the crime, after appellant and Benjamin had both been placed under arrest, and there taking and sifting the loose ashes, which were still very hot, out of the stove for the purpose of ascertaining if there was any evidence of the fruits of the crime that was attempted

to be destroyed, but that he found nothing. Benjamin already had confessed that he had burned the leather part of the blackjack.

There was no error in admitting this testimony or in refusing to strike the same, as it was proper testimony to be considered by the jury in rebuttal to the testimony offered by appellant with reference to the finding of the keys and zipper in the ash pile back of the apartment. Undoubtedly, appellant introduced the evidence with regard to the finding of the keys and zipper in the ash pile in order that the inference would be drawn that Benjamin placed them there. It would be quite natural to presume, that if Benjamin had these articles and actually intended to burn the same he would have done it in a stove and not out in the ash pile; that he would do so as soon as possible and before he was arrested. When Moody examined the stove, the loose ashes of the day's fire, apparently, were still in the stove and hot, from which the jury could have at least drawn the inference that whatever had been burned in the stove that day had not been removed from the ashes. Even though Moody's testimony had not been proper rebuttal, there is nothing to indicate that appellant was not given an opportunity to meet the evidence, or was in any manner prejudiced thereby. A large amount of discretion is vested in the trial judge, with reference to the admission of rebuttal testimony, and unless it is clearly shown such discretion was abused the appellate court will not disturb the ruling of the lower court.

In the case of *State v. Mushrow*, 32 Ida. 562, 185 Pac. 1075, this court held:

"The author of this opinion and Justice Rice are of the opinion that the evidence complained of was properly admissible as rebuttal evidence under the foregoing rule, yet even if it were not strictly rebuttal evidence, its admission or exclusion rested in the discretion of the trial court, provided the defendant had a fair opportunity to meet the evidence. (C. S., sec. 8941, subd. 4; *State v. Ellington*, 4 Ida. 529, at 536, 43 Pac. 60.)"

In the case of *State v. Ellington,* 4 Ida. 529, 43 Pac. 60, Mr. Justice Huston, speaking for the court, said:

"It is objected that the prosecution were allowed to recall certain witnesses to testify in regard to matters which it is claimed were not strictly rebuttal. This is a matter entirely within the discretion of the trial court, and is so made by statute. It would most certainly be a denial of justice to refuse to allow witnesses to be recalled on the part of a defendant on trial for a capital offense merely because the matters in regard to which they are to testify are not strictly rebuttal, although material, and the same rule should apply to the state."

See, also, *State v. Waln,* 14 Ida. 1, 80 Pac. 221.

The next error assigned is, that the court erred in entering judgment for the reason that there was no testimony or evidence tending to corroborate the testimony of the alleged accomplice, Clifford Benjamin, and therefore the judgment is not supported by the evidence; that the corroboration is insufficient for the reason that there is no evidence of any material fact or circumstance, which standing alone and independent of the alleged accomplice's testimony tends to connect the defendant with the offense charged.

The contention of appellant with reference to this assignment is untenable. In fact Benjamin's testimony was corroborated by other witnesses and circumstances in almost every detail. Just a few of the many instances will be enumerated to show how fallacious appellant's contention is: Benjamin testified that Orr and himself were driving about town in Orr's car, just prior to the time of the crime, and drove to the store of Matthews, the time being about 11:30 o'clock P. M. Witnesses Standley and Wells testified that they saw Orr and Benjamin driving in Orr's car towards Matthews' store at 11:30 o'clock P. M.

Benjamin again testified that he was to wait in Orr's car until Matthews drove away and then to drive in pursuit of Matthews' car. Blanchard testified that he heard the crash of Matthews' car colliding with the tree in the park-

ing, and hurried to the wreck, and a few moments later intercepted Benjamin as he drove up in Orr's car.

Benjamin testified that Orr was injured in the consummation of the robbery. Doctor Magee testified that in the afternoon of the day of the crime he examined Orr and found many injuries, indicating that they had been received in the course of the preceding twenty-four hours.

Benjamin also testified with reference to the blackjack, that Orr had it and that he was going to use the same on Matthews in the robbery. Blanchard, and others, testified that the blackjack was found on the front seat of the Matthews car.

Under section 19–2017, Idaho Code Annotated, the corroborating testimony need only tend to connect the defendant with the crime. It may be slight (*People v. McLean,* 84 Cal. 480, 24 Pac. 32); and it need only go to one material fact (*State v. Knudtson,* 11 Ida. 524, 83 Pac. 226); and the corroboration may be entirely circumstantial (*State v. Gillum,* 39 Ida. 457, 228 Pac. 334). There is no merit in this assignment.

 Next the appellant complains that the court erred in giving instruction number 7, which reads as follows:

"You are further instructed that an alibi is an affirmative defense, and it is incumbent upon the defendant where he relies upon the defense of an alibi to prove it, not beyond a reasonable doubt, nor a preponderance of the evidence but by such evidence and to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of his guilt."

Appellant makes the contention that the instruction was erroneous for the reason that the jury was told therein that the defense of alibi is an affirmative defense, and that it was incumbent upon the defendant to prove it. The argument of appellant is fully met by the holding of this court in the case of *State v. Brassfield,* 40 Ida. 203, 232 Pac. 1, where this court said:

"That the appellant is not called upon to establish his alibi beyond a reasonable doubt will be conceded. However, it is an affirmative defense and it was incumbent upon appellant to come forward with his proof of an alibi, and where the state has established a *prima facie* case and the appellant relies upon the defense of an alibi, the burden is upon him to prove it, not beyond a reasonable doubt nor by a preponderance of the evidence, but by such evidence and to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of his guilt."

The instruction complained of correctly states the law, and fully meets the requirements laid down by this court. (See also, *State v. Sheehan*, 33 Ida. 553, 196 Pac. 532.)

■ Assignments of error numbers 4 and 5 are predicated on instructions 8 and 9, given to the jury. Suffice it to say that both of these instructions were given at the request of the defendant. If there is any error in either of the instructions he cannot be heard to complain, as he invited it. It becomes unnecessary for us to analyze either of these instructions to determine whether they correctly state the law.

■ The remaining assignment, which need be considered, is that with reference to the giving of instruction number 13, which reads as follows:

"Jurors are not bound by the uncontradicted testimony of an interested party when such testimony upon being carefully weighed, does not commend itself as worthy of belief. If, by reason of improbable and inconsistent statements the testimony of an interested party appears to be lacking in the element of truthfulness, juries may in their discretion reject the same."

Appellant claims this instruction is contrary to law and requires the jury to specially scrutinize the testimony of defendant, and puts the defendant in a class inferior to other witnesses. In other words, that by such an instruction the appellant was singled out and placed in a class

by himself. This court in the case of *State v. Rogers*, 30 Ida. 259, 163 Pac. 912, had this to say:

"We think the better rule for the court to follow is not to single out any special witness personally and burden his testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely. Instructions as to the credibility of a witness should be general, and apply equally to all of the witnesses for the state and the defendant alike. Because a witness may be the defendant is no particular reason why he should be visited with condemnation upon the one hand or clothed with sanctity upon the other. He is before the court as a witness and should be treated by both the court and jury just as other witnesses are treated, no better and no worse. And the giving of such instruction cannot be regarded as otherwise than erroneous."

To the same effect: *State v. Lundhigh*, 30 Ida. 365, 164 Pac. 690; *State v. Foyte*, 43 Ida. 459, 252 Pac. 673.

In all three cases, however, the defendant was specially mentioned, and there was no question but that the instruction was specifically directed as against the defendant. In the instruction complained of in the instant case, the word "defendant" was not used to indicate to whom the same was applicable, but instead the court used, "an interested party." The language used in the instruction is general and the article "an" is equivalent to "any." (*Kaufman v. Superior Court*, 115 Cal. 152, 46 Pac. 904.) Consequently, the instruction, as given, had reference to any interested party, and did not mention any particular individual. Appellant contends, however, that under sections of our statutes the words, "an interested party," as a matter of law would not, and could not, refer to anyone except the defendant. The sections of the statutes referred to by appellant are as follows:

I. C. A., 19–103. "The proceedings by which a party charged with a public offense is accused and brought to trial and punishment is known as a criminal action."

I. C. A., 19–104. "A criminal action is prosecuted in the name of the state of Idaho, as a party, against the person charged with the offense."

I. C. A., 19–105. "The party prosecuted in a criminal action is designated in this code as the defendant."

We do not believe that such a technical construction is justified. As to the language used in the instruction, the general rule covering the construction of language applies, namely:

"That words which are not technical must be construed in their ordinarily accepted meaning applies to the construction of the language used by the court in instructing a jury." (14 R. C. L. 817, sec. 75.)

It is expressly recognized by our statutes that persons, other than formal parties, may, as witnesses, have an interest in the outcome of an action or proceeding. Section 16–201, I. C. A., reads as follows:

"All persons, without exception, otherwise than is specified in the next two sections, who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses. *Therefore, neither parties nor other persons who have an interest in the event of an action or proceeding are excluded;* nor those who have been convicted of crime; nor persons on account of their opinions on matters of religious belief; although in every case the credibility of the witness may be drawn in question, by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility."

The provisions of the statute are not made applicable exclusively to civil actions, but apply to criminal actions as well. It is but logical to say that there may be other persons than the formal parties who have a special interest in the outcome of a criminal action, and who would thereby, generally speaking, be interested parties. To say that a mother, a brother, an accomplice or the complaining witness

or the sheriff are not interested parties, as the term in common parlance is generally used, would hardly seem reasonable. In common usage the word "party" is not restricted to the strict meaning of plaintiff or defendant in a lawsuit, as is shown in the following definition: "Party," as defined in Funk and Wagnalls New Standard Dictionary, is "one concerned in or privy to a matter as in the relation of accessory or confidant," and again "a partial person, one who takes sides."

In this case a number of witnesses testified both for the state and defense, which undoubtedly the jury, as the term is generally accepted and understood, must have considered as interested parties. His mother, two brothers and one of his attorneys testified on appellant's behalf. The complaining witness, the sheriff and other city and county officials testified on behalf of the state, all of whom undoubtedly had a special interest in the outcome of the case. Benjamin, the confessed accomplice, who testified, undoubtedly was especially interested as to its outcome.

There is another feature of the instruction which clearly indicates that it was not specially directed against the appellant. The instruction uses this language: "Jurors are not bound by the uncontradicted testimony of an interested party. . . . . " We have checked the record carefully and find that as to all material facts testified to by the appellant he was flatly contradicted by the evidence of other witnesses, or by circumstances. That being true, then the instruction did not apply to him, as there was no uncontradicted testimony given by him to be considered. Contradiction, as used within the instruction, does not necessarily mean direct testimonial contradiction, but may be contradiction of circumstances. (*Coey v. Darknell,* 25 Wash. 518, 65 Pac. 760; *Keene v. Behan,* 40 Wash. 505, 82 Pac. 884; *Elwood v. Western Union Tel. Co.,* 45 N. Y. 549, 6 Am. Rep. 140.)

The court gave a general instruction as to the credibility of the witnesses, which was amply sufficient. There was no necessity for the giving of instruction number

13, and it would have been better had it not been given. However, we do not believe that the giving of instruction number 13 substantially jeopardized the rights of appellant. We have studied the record very carefully and it leads to but one inevitable conclusion, that the appellant is guilty. Even if we concede that instruction number 13 is technically erroneous, the jury, without a violation of their oath, could not have failed to find the appellant guilty, and because of this the appellant could not have been prejudiced by the giving of such instruction.

In the case of *State v. Marren,* 17 Ida. 766, at 790, 107 Pac. 993, 1001, the late Justice Stewart uses the following language:

· "Although the instruction referred to contains matter which should not have been given to the jury, we are, however, of the opinion that the appellant could have been in no way prejudiced by the giving of such instruction. Other instructions were given to which no exception was taken, which clearly charged the jury with reference to circumstantial evidence; and not only that, but the evidence in this case is so clear and convincing of the guilt of the appellant that the jury could in no possible manner have been influenced to return a verdict of guilty by the objectionable matter contained in this instruction; and from the evidence, the jury could not, without a violation of their oaths, fail to have found the defendant guilty, and because of this, the defendant could not have been prejudiced by the giving of such instruction.

"Rev. Codes, sec. 8070, admonishes this court: 'After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.' And again, Rev. Codes, sec. 8236: 'Neither a departure from the form or mode prescribed by this code in respect to any pleadings or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right.' The substance of these statutory provisions is

that a new trial ought never to be granted, notwithstanding some mistake or even misdirection by the judge, provided the revisioning court is satisfied that justice has been done and that upon the evidence no other verdict could properly have been found.''

In the case of *State v. Silva*, 21 Ida. 247, 120 Pac. 835, 839, this court held:

''That if the evidence of the defendant's guilt is satisfactory, that is, such as ordinarily produces a conviction in an unprejudiced mind, beyond a reasonable doubt, and the result could not have been different had the instruction been omitted, the case would not be reversed because of such erroneous instruction.''

Again, in the case of *State v. Brill*, 21 Ida. 269, 121 Pac. 79, the court said:

''That even though an instruction is erroneous and ordinarily the error would be material, yet if the evidence of the defendant's guilt is satisfactory, that is, such as ordinarily produces moral certainty, or conviction in an unprejudiced mind, and the result would not have been different had the instruction been omitted, the case will not be reversed because of such erroneous instruction.''

See, also, *People v. Flood*, 41 Cal. App. 373, 182 Pac. 766. To justify a reversal it is not sufficient, standing alone, that error be made to appear, but that the error complained of has resulted in a miscarriage of justice. Unless such fact is made to appear from the record it is the duty of the court, notwithstanding the alleged error, to affirm the judgment. There is no miscarriage of justice in this case.

Judgment affirmed.

Budge, C. J., Givens, J., and Reed, District Judge, concur.

Petition for rehearing denied.

HOLDEN, J., Dissenting. — Defendant was convicted of robbing, by force, one Thompson D. Matthews of the sum of $150. Matthews owned and operated a confectioner's shop

near the campus of the University of Idaho, in the town of Moscow. At about 12:20 in the early morning of October 25, 1932, the confectioner closed his shop, got into his automobile, and, accompanied by his clerk, started for home, carrying with him the receipts of the day's business. On the way home Matthews stopped at the home of the clerk and let him out of the car and then continued on his way home. Someone, before the confectioner had started home, concealed himself in the Matthews car, back of the front seat. After the clerk had gotten out of the car, and when Matthews was a short distance from home, and traveling at about 45 miles an hour, he was struck over the head with a blunt instrument and robbed. The case comes into this court on an appeal from the judgment of conviction.

Appellant contends that the trial court erred in giving instruction No. 13 for the reason that it is contrary to law and required the jury to specially scrutinize his testimony and puts him in a class inferior to other witnesses, it being also contended that instructions as to the credibility of witnesses should be general, and apply to all of the witnesses for the state and defendant alike, and that the testimony of appellant ought not to be singled out for special comment.

Instruction No. 13 reads as follows:

"Jurors are not bound by the uncontradicted testimony of an interested party when such testimony upon being carefully weighed, does not commend itself as worthy of belief. If, by reason of improbable and inconsistent statements the testimony of an interested party appears to be lacking in the element of truthfulness, juries may in their discretion reject the same."

By instruction No. 13 the trial court does not actually name the appellant. The comments of the court being directed to and pointedly aimed at the testimony of "an interested party." Therefore, who is the or *an interested party*, as a matter of law, in a criminal action? In determining that question we turn to the following applicable sections of the statute:

"19–103. Criminal action defined.—The proceedings by which a party charged with a public offense is accused and brought to trial and punishment is known as a criminal action.

"19–104. Parties to criminal actions.—A criminal action is prosecuted in the name of the state of Idaho, as a party, against the person charged with the offense.

"19–105. Defendant.—The party prosecuted in a criminal action is designated in this code as the defendant."

The proceedings, then, by which a *party* charged with a public offense is accused and brought to trial and punishment is "known as a criminal action," and that *criminal action,* under the code, is prosecuted in the name of and by the state of Idaho, as a *party* plaintiff, against the person charged with the commission of the offense, and the *party prosecuted* in such criminal action is designated in the code as the *defendant.*

So that in the case at bar, as a matter of law, we only have two interested parties, the state of Idaho (a body politic, prosecuting by and through the prosecuting attorney for Latah county) and the appellant. Of course, the state of Idaho, being a body politic could not and did not testify. On the other hand, the appellant is a natural person and did testify in his own behalf. Consequently, there was only one *party* to whom the comments of the trial court could possibly have applied, and that *party* was the appellant.

By instruction No. 12 the trial court instructed the jury very fully and correctly on the credibility of witnesses in general, as follows:

"Gentlemen of the Jury, you are the sole and exclusive judges of the facts of what has been proven in this case, and of the credibility of the witnesses and of the weight of the testimony of each and all of them, and in determining these questions you should take into consideration every fact and circumstance in evidence, which, in your judgment, affects the credibility of any witness, or the weight to be given to his or her testimony, and from the facts and circumstances in evidence it is for the jury to determine what

witnesses have or have not spoken truthfully, and to give credit accordingly.

"It is the duty of the jury in passing upon the credibility of the testimony of the several witnesses to reconcile all the different parts of the testimony if possible. It is only in cases where it is palpable that a witness has deliberately and intentionally testified falsely as to some material matter, and is not corroborated by other evidence that a jury is warranted in disregarding his entire testimony.

"The Court instructs the jury that the credibility of the witnesses is a question exclusively for the jury, and the law is that where a number of witnesses testify directly opposite to each other, the jury is not bound to regard the weight of the testimony as evenly balanced; the jury have the right to determine from the appearances of the witnesses on the stand, their manner of testifying, their apparent intelligence or lack of intelligence, and from the other surrounding circumstances appearing on the trial, which witnesses are the more worthy of credit, and to give credit accordingly. In determining what weight a witness has in the result of the trial, consider all of the facts shown by the evidence, and whether the interest of the witness has caused him to color, exaggerate or suppress the truth."

After having given the above instruction, the trial court immediately followed with and gave instruction No. 13, which served to at once especially direct the attention of the jury to the testimony of the appellant, and by thus singling him out, gave the jury to understand that the testimony of the appellant should be weighed, considered and tested somewhat differently and scrutinized more closely than the testimony of other witnesses, and suggesting that the appellant was liable to testify falsely because he was an or the interested party. Chief Justice Budge, exhaustively reviewing the authorities, held in *State v. Rogers*, 30 Ida. 259, 163 Pac. 912:

"As to instruction No. 30, we have to say that this instruction has no doubt been frequently given by trial courts of this state. Nevertheless, upon a careful examination of

the language here used, and of the authorities, we are convinced that it is *erroneous* and *prejudicial* to the rights of the appellant. This instruction reads as follows:

" 'The court instructs you, as a matter of law, that when the defendant testified as a witness in this case, he became as any other witness and his credibility is to be tested by and subject to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded his testimony, *the jury have a right to take into consideration the fact that he is interested in the result of the trial, as well as his demeanor and conduct upon the witness-stand, and during the trial, and whether or not he has been contradicted or corroborated by other witnesses or circumstances.*'

"The words italicized, it is insisted by counsel for appellant, are prejudicial, for the reason that the defendant is singled out and the attention of the jury is particularly directed to his credibility as a witness. We think the better rule for the court to follow is not to single out any special witness personally and burden his testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely. Instructions as to the credibility of a witness should be general, and apply equally to all of the witnesses for the state and the defendant alike. Because a witness may be the defendant is no particular reason why he should be visited with condemnation upon the one hand or clothed with sanctity upon the other. He is before the court as a witness and should be treated by both the court and the jury just as other witnesses are treated, no better and no worse. And the giving of such instruction cannot be regarded as otherwise than erroneous. (*People v. Maughs* [149 Cal. 253, 86 Pac. 187], *supra; Fletcher v. State,* 2 Okl. Cr. 300, 101 Pac. 599, 23 L. R. A., N. S., 581; *Culpepper v. State* [4 Okl. Cr. 103, 111 Pac. 679, 140 Am. St. 668, 31 L. R. A., N. S., 1166], *supra; Buckley v. State,* 62 Miss. 705; *State v. Webb* [6 Ida. 428, 55 Pac. 892], *supra; People v. Vereneseneck-ockockhoff,* 129 Cal. 497, 58 Pac. 156; 2 Thompson, Trials,

2d ed., sec. 2421; *Banks v. State,* 2 Okl. Cr. 339, 101 Pac. 610; *Crow v. State,* 3 Okl. Cr. 428, 106 Pac. 556.)"

In *State v. Rogers, supra,* the judgment of conviction was reversed and a new trial ordered, and, further, the rule announced in the Rogers case was thereafter strongly adhered to in *State v. Lundhigh* and *State v. Foyte, supra,* and until now it was thought that the rule of law announced in the Rogers case had become so well settled in this jurisdiction as to be absolutely impervious to either nice "distinctions," "distinguishing," or other similar or any "judicial treatment" which would nullify that rule, but it appears from the majority opinion that the application of that rule, after all, depends upon the quantity of evidence adduced against a defendant in any given case.

The robbery in question was very brutal and cruel, showing a wanton and wicked heart in whoever committed the crime, which apparently had the effect of making a majority of the court see *red* and visit upon the defendant in the case at bar the full weight and force of the condemnation of the crime itself, sweeping aside any and all principles of law standing in the way of an affirmance of the judgment of conviction.

And once it is concluded from the testimony of witnesses (whose bearing and demeanor while on the witness-stand the majority has had no opportunity to observe) that a defendant is guilty, then, *under the majority opinion,* a defendant has *no right* to have the jury, trying him, correctly instructed as to the law of his case, which this court is under any duty to enforce.

For the reasons above stated, I cannot concur in the majority opinion.