(No. 7239. May 17, 1945.)

STATE OF IDAHO, Respondent, v. HORACE MUNDELL, Appellant.

[158 Pac. (2d) 799.]

A. A. Merrill for appellant.

Frank Langley, Attorney General, and J. R. Smead, Assistant Attorney General, for respondent.

BUDGE, J.—Throughout this opinion we shall refer to appellant as the defendant.

Defendant was charged with, and convicted of, the crime of burglary, from which judgment he has appealed. Briefly stated, the following facts are disclosed by the record:

Ritchie and Woolf, together with one Jenkins and defendant, were charged with the commission of the crime of burglary at Rexburg, Madison County, on June 4, 1944. Ritchie, Woolf and Jenkins plead guilty to the crime charged, and sentenced to the penitentiary. Upon the trial of the charge against defendant they testified as witnesses for the State. From the testimony of Ritchie and Woolf

it appears that on the evening of June 3rd, Ritchie, Woolf, Jenkins and defendant were at a cabin in an auto court at Idaho Falls. Ritchie, his wife, a sister of defendant, and defendant and his wife, occupied the cabin; the four men left Idaho Falls on the evening of June 3rd in Woolf's car and went to Rexburg. They visited the Modern Cigar Store, thereafter drove to Tetonia, where they remained for approximately five hours, and then returned to Rexburg. Woolf's car was driven to the back door of the Modern Cigar Store, the transom above the door was forced open, Woolf crawled in and opened the door from the inside, the four of them then rolled out the safe that was in the store and loaded it into the car. From there they drove to a point across the Snake River west of Rexburg, where they broke open the safe and took from it money, war bonds, a diamond ring, and two watches. They then took the safe back to the bridge and threw it into the river, then drove back to Idaho Falls, arriving there early Sunday morning, June 4th. Jenkins then drove away from the auto court in his own car, and was subsequently located in Wyoming. Ritchie, Woolf and defendant stayed at the auto court for a very short time, and then left in Woolf's car for Montana.

From the testimony of the operators of the Modern Cigar Store the safe contained, among other things, money, checks, war bonds, a diamond ring, and two watches. When the safe was retrieved all the above mentioned property was missing.

On the way to Montana the bonds were hidden under a rock near Spencer, Idaho, and were recovered upon their return a week later, whereupon they were secreted behind the upholstering at the side of the back seat of the car, where they were later found. When the three men reached Butte, defendant and Ritchie offered to sell the diamond ring to a certain jeweler, who tendered his check in payment therefor, but acceptance of the check was refused and for that reason the sale was not consummated. The three men then went to Missoula, Montana, where defendant and Ritchie sold the ring to a jeweler for $90.00, and the money so received was split three ways. About a week later the three men returned to Idaho Falls, where defendant was apprehended and charged, in conjunction with Ritchie, Woolf and Jenkins, with the crime of burglary.

Defendant relies upon ten assignments of error. We shall discuss only such as we deem material.

The first error assigned is predicated upon the action of the court in denying defendant's motion to instruct the jury to find defendant not guilty. Refusal to give such instruction is not reversible error, nor is it reviewable in this court. (*State v. Richardson,* 56 Ida. 150, 157, 50 P. (2d) 1012, 1015, and cases therein cited.)

The second assignment of error is directed against the ruling of the court allowing a State's witness to testify, over defendant's objection, to the articles taken from the safe for the reason that the same were not plead in the information. There is no merit in this connection.

In the third, fourth and fifth assignments of error appellant seeks to raise the point that the court erred in not allowing Lila Ritchie to relate an alleged conversation with defendant and his wife on the night of the commission of the crime, and a similar ruling was made concerning alleged conversations had between the witness, her husband, and the Mundells. Assignment No. 5 involves similar questions asked Elreta Mundell, a witness for the defense. Such testimony was clearly hearsay. Furthermore, the testimony was not admissible for the reason that all the parties were present at the trial and could have been called to speak for themselves. (*State v. Sims,* 35 Ida. 505, 206 P. 1045; *State v. Bubis,* 39 Ida. 376, 227 P. 384.) Appellant submits no authorities in support of the above contentions, consequently they are not here for consideration. (*Blaine County Inv. Co. v. May,* 49 Ida. 766, 291 P. 1055.) It is urged that the court erred in sustaining an objection to a question asked Elreta Mundell, whether she knew the substance and effect of a certain telegram she had received from the defendant. The telegram was the best evidence. There is no proof that it was lost or not available. Furthermore, the telegram was incompetent, irrelevant and immaterial and had no bearing on the case. There is no assignment of error raising an objection to the admissibility of the telegram.

Assignment No. 6 has to do with the striking from the record of a statement made by defendant's wife referring to his participation in the burglary. Mrs. Mundell testified, referring to her husband, that he "wouldn't

do anything like that." The court properly struck out the statement. At most, it was but a conclusion of the witness. Appellant also complains that it was error for the court to strike out the above testimony for the reason that another question had been asked and answered before the prosecuting attorney could make his motion to strike. There is no merit in this contention.

Assignment of error No. 7 asserts the court erred in overruling defendant's objection to an inquiry by the prosecutor as to what Lila Ritchie had said in a statement made by her and reduced to writing by the county stenographer, the statement having been made in the presence of the prosecuting attorney, the sheriff, and the county stenographer. In her statement, among other things, she stated defendant left the cabin in company with Woolf, Ritche and Jenkins about nine o'clock, driving away in Woolf's car, and did not return to the cabin on the night of June 3rd. She contradicted her statement, and testified that defendant returned to the cabin between ten and eleven o'clock on the night of June 3rd, and so far as she knew remained in the cabin in the room occupied by defendant and his wife during the night, and left early on the morning of the fourth for Montana with Woolf and Ritchie.

It is urged the court erred in permitting the State to impeach its own witness by showing contradictory statements made by the witness. Defendant also contends the court erred in permitting the State to ask Lila Ritchie, on cross-examination, certain questions relative to the time defendant returned to the cabin on the night of June 3rd, which was not gone into by defendant on direct examination. The questions asked and complained of pertain directly to her testimony on direct examination. A witness may be impeached by the party calling him, as was done in the instant case. (Sec. 16-1210, I.C.A.) The court committed no reversible error in this respect, and the defendant was not prejudiced thereby.

Mrs. Orvilla Heck, called as a witness on behalf of the State, testified, in part, as follows:

"Q. Were you at the Ritchie cabin the evening of Saturday the third day of June of this year?

"A. Yes, I was.

"Q. What time did you go there?

"A. I would say between nine-thirty and ten.

"Q. And when you went there who were there?

"A. Mrs. Ritchie, and Mrs. Mundell, and Jackie Sykes.

"Q. Who was Jackie Sykes?

."A. Jackie Sykes was the girl that lived right next door to me in apartment number thirteen.

"Q. Did she go with you?

"A. She had gone there just a few minutes before I had.

"Q. Now, how long did you remain at the Ritchie cabin that night?

"A. It was between two-thirty and three when I left.

"Q. Now, do you know if there was a bed made on the floor of the kitchen?

"A. Yes.

"Q. Now, where were you folks sitting with reference to that bed?

"A. We had made the bed, and were sitting on top of it.

"Q. Now, how many were there sitting on the bed?

"A. The two of us were sitting on the bed, and Mrs. Ritchie was sitting on the oven door, and Mrs. Mundell was sitting in a rocking chair by the sewing machine.

"Q. During the time that you were there did you see Horace Mundell?

"A. No, I didn't see him.

"Q. Did he come in the house?

"A. Not that I ever seen him.

"Q. Could he have come in the house without you seeing him?

"A. No, he couldn't

* * * *

"Q. Well, could anybody have come in there and gone to bed in the kitchen without you knowing it?

"A. No."

There is a direct conflict in the evidence as to whether defendant was in the cabin on the night of the 3rd up to at least two-thirty o'clock, during the time Mrs. Heck was there. Furthermore, it will be recalled that Mrs. Ritchie and defendant's wife testified that defendant returned to the cabin between ten and eleven o'clock on the evening of the 3rd. It was a question of fact for the jury to determine the whereabouts of the defendant at the time in question.

 In assignment No. 8 appellant urges error on the part of the court in refusing to strike the testimony of J. Harold Matson, sheriff, who, defendant contends, was called as a witness on re-direct examination by the State.

An examination of the record discloses that the witness Matson when testifying about the matter complained of was so testifying in rebuttal. Mrs. Mundell in the course of her testimony testified that her husband was with her in their room from eleven o'clock in the evening of June 3rd until the next morning, when he went to Montana. The motion to strike was on the ground that the testimony of the sheriff was not proper rebuttal. The sheriff's testimony was to the effect that prior to the trial Mrs. Mundell stated to him that she had told her husband that "if he had anything to do with this case to do like Elbert and Dale had done, confess it, that it would be better for him." The testimony of the sheriff tended strongly to rebut the testimony of Mrs. Mundell that her husband, the defendant, was with her during the night of June 3rd. If she had known the whereabouts of her husband during the night of June 3rd, her conversation with him and the conversation related to the sheriff, as to what she had told her husband, was clearly inconsistent. Why should she have told him that if he was implicated in the burglary he should confess it, if he was with her during the entire time of the commission of the burglary? When Mrs. Mundell was called in surrebuttal she did not deny the statement of the sheriff as testified to by him. If we understand assignment No. 8 correctly, it has to deal only with the denial of the court of the motion to strike the testimony

of sheriff Matson on the ground that the rebuttal was improper. With this contention we are not in accord. Any evidence that repels, counteracts or disproves evidence given by a witness is proper rebuttal. (*State v. Mushrow*, 32 Ida. 562, 185 P. 1075; *State v. Orr*, 53 Ida. 452, 458, 24 P. (2d) 679, 681.) The trial court has a wide range of discretion in admitting rebuttal evidence. (*State v. Martinez*, 43 Ida. 180, 250 P. 239; *State v. Orr*, supra.) As was said in *State v. Newberg* (Ore.), 278 P. 568:

"It is our opinion that the evidence received as rebuttal testimony was such. The admission of rebuttal testimony rests largely within the discretion of the trial court, and this generally includes the determination of whether the testimony is of that nature."

▋ Assignments numbered 9 and 10 are directed against certain remarks alleged to have been made by the prosecuting attorney, during the argument to the jury, in derrogation of alleged acts and conduct of counsel for defendant.

We have examined the record and find no prejudicial error that would warrant a reversal. The court instructed the jury to disregard the remarks or personal opinions of either counsel, to analyze the evidence, draw their own conclusions, and that statements of counsel were not in evidence. (*State v. Rice*, 7 Ida. 762, 66 P. 87; *State v. Cosler*, 39 Ida. 519, 228 P. 277; *State v. Caviness*, 40 Ida. 500, 235 P. 890; *State v. Smith*, 46 Ida. 8, 265 P. 666; *State v. Flitton*, 52 Ida. 374, 15 P. (2d) 397; *State v. Frank*, 60 Ida. 774, 97 P. (2d) 410.) Defendant cites no authorities in support of the two foregoing assignments. (Rule 52, Rules of the Supreme Court.)

Defendant sought to establish an alibi, that he was elsewhere, not at the scene of the crime, and introduced evidence in an attempt to establish that he was not at Rexburg or at the Modern Cigar Store when the burglary was committed, consequently did not commit the crime charged in the information; that he was at the Ritchie cabin at Idaho Falls, in bed with his wife from approximately eleven o'clock on the night of the 3rd until seven o'clock on the morning of the 4th, when he left for Montana.

▋ It was incumbent upon the State to prove de-

fendant was at the scene of the crime and participated therein, as alleged in the information. The State made out a prima facie case against defendant which he sought to overcome by witnesses called for that purpose. Where there is a conflict in the testimony as to whether defendant was at the place of the commission of the crime and participated therein, but there is, nevertheless, substantial evidence establishing his presence there and his participation in the commission of the crime, the judgment will not be reversed.

Defendant was not called upon to establish an alibi beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence and to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of his guilt. (*State v. Sheehan*, 33 Ida. 553, 196 P. 532; *State v. Orr*, supra; *State v. Vanek*, 59 Ida. 514, 84 P. (2d) 567.) The jury concluded that no such reasonable doubt had been created in their minds that defendant was at the Ritchie cabin and not at the scene of the crime and did not participate therein on the morning of the 4th day of June, 1944.

Defendant, in his oral argument and throughout his brief, strenuously urges that the State failed entirely to corroborate the testimony of accomplices Woolf and Ritchie.

Defendant has neither assigned nor specified the particulars wherein the evidence fails to corroborate the testimony of the accomplices. (*Bicandi v. Boise Payette L. Co.*, 55 Ida. 543, 554, 44 P. (2d) 1103.) Where the insufficiency of the evidence is relied on, and the particulars wherein it is insufficient are not pointed out in the assignments of error, it will not be reviewed. (*State v. Maguire*, 31 Ida. 24, 29, 169 P. 175; *State v. Poynter*, 34 Ida. 504, 513, 205 P. 561, 564.) This rule, however, has not been strictly followed. (*State v. Sims*, supra; *State v. Miller*, 60 Ida. 79, 88 P. (2d) 526.)

Section 19-2017, I.C.A., provides:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the

commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

In *State v. Gillum*, 39 Ida. 457, 228 P. 334, it is said:

"Where the circumstances point to the guilt of the accused, independent of the accomplice's testimony, such circumstantial evidence may be a sufficient corroboration of the accomplice's testimony to sustain a conviction. It is not necessary that the testimony of an accomplice be corroborated in every detail. Any corroborative evidence legitimately tending to connect the defendant with the commission of a crime may be sufficient to warrant a conviction, although standing by itself it would not be sufficient proof of defendant's guilt." (*State v. Gilbert*, 65 Ida. 210, 142 P. (2d) 584.)

Under the provisions of sec. 19-2017, supra, corroborating evidence need only tend to connect defendant with the crime. It may be slight. And it need only go to one material fact. (*People v. McLean* (Cal.), 24 P. 32.)

There is ample evidence tending to corroborate the testimony of the accomplices Ritchie and Woolf. It cannot logically be said that it was only slight, which is all that is required, but when all the facts and circumstances, actions and conduct of the defendant are considered, there is ample evidence to sustain the judgment. (*State v. Orr*, supra; *People v. King* (Cal.), 85 P. (2d) 928; *People v. Anderson* (Cal.), 94 P. (2d) 627, 631; *People v. Suter* (Cal.), 111 P. (2d) 23, 28; *People v. Dorrance* (Cal.), 150 P. 10, 12.)

The judgment is affirmed, and it is so ordered.

Holden, J., and Buckner, D.J., concur.

GIVENS, J., dissenting.—The prosecuting attorney and sheriff of Teton County testified as to certain conversations with the defendant relative to the claimed offense but which instead of connecting him therewith was directly opposite, because while this defendant admitted he had been with the accomplices early in the evening, denied being with them at the time of the offense and there is

nothing in these conversations to justify a contrary inference. He sold a ring for the accomplice, Ritchie, but even if he had a "hunch" that it was stolen, this aside from the testimony of the accomplice does not tend to connect him with the theft thereof.

Lila Ritchie, his brother-in-law's wife, testified he was not at home when he said he was. Even though he was not then at home, the connection with the crime must come through the testimony of the accomplices and the same is true with the testimony of Orvilla Heck. The corroborating testimony must be independent of the testimony of the accomplice. It is not sufficient if the only connecting link is the testimony of the accomplices, and one accomplice, of course, cannot corroborate another.

There being no sufficient evidence to corroborate, the case should be reversed and remanded for a new trial if there be additional available evidence, otherwise dismissed.

Ailshie, C.J., concurs with this dissent.