[No. 29379.    Department One.    October 13, 1944.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN HARMON, *Appellant.*[1]

[1]Reported in 152 P. (2d) 314.

*Bertil E. Johnson,* for appellant.

*Thor C. Tollefson, Marshall McCormick,* and *Theo. L. DeBord,* for respondent.

JEFFERS, J.—The defendant, John Harmon, was, by an information filed by the prosecuting attorney for Pierce county, on September 15, 1942, charged in two counts with two separate burglaries. Each count charged the crime of burglary in the second degree, under Rem. Rev. Stat., § 2579 [P. C. § 8772]. Inasmuch as no question is raised as to the sufficiency of the information, we shall set out only that part of each count which refers to the time and place of the alleged burglary.

In the first count defendant was charged with unlawfully breaking and entering a building known as the Sunshine Tavern, 937 South Tacoma avenue, Tacoma, Pierce county, Washington, on or about May 29, 1942. In the second count defendant was charged with unlawfully breaking and entering a building known as the Washington State Liquor Store, 25th and East "D" street, Tacoma, Pierce county, Washington, on or about May 30, 1942.

Defendant appeared and entered a plea of not guilty to each count.

The cause came on for hearing before the court and a jury on January 17, 1944, and on January 18th the jury returned a verdict of guilty on both counts. On January 20, 1944, defendant filed a motion for new trial, which was denied February 24, 1944. Judgment and sentence were entered February 26, 1944, and on the same day, in open court, defendant gave oral notice of appeal.

Appellant makes the following five assignments of error: (1) Misconduct on the part of the prosecuting attorney in requesting the witness Ryan to claim his constitutional privilege to refuse to testify, thereby depriving appellant of the benefit of the testimony of the witness Ryan; (2) in restricting the cross-examination of the witness Carl Brehan, and particularly in denying appellant the opportunity of inquiring into the number and kind of crimes Carl Brehan had committed immediately prior to his arrest; (3) in sus-

taining respondent's objection to the testimony of the witness Carriker concerning the threat made by Brehan against appellant; (4) in denying the offer that the witness Carriker would testify that the witness Brehan had threatened to "get" appellant; (5) in denying appellant's motion for new trial.

Before discussing the respective assignments of error, we think some of the testimony should be set out, in order that we may have the general picture presented to the trial court and jury, and particularly that we may have before us the claimed relationship of appellant to the witnesses Brehan, Ryan, and Carriker.

R. J. Morrison, a detective on the police force of Tacoma, was called by the state and testified that, at about six-twenty on the morning of May 29, 1942, he was on duty and received a call that the Sunshine Tavern had been burglarized. He proceeded immediately to the tavern and found that some boards had been removed from the back part of the building and an entrance apparently gained that way. Upon entering the building he found that the safe had been "punched"; that is, the combination knocked off and an entrance to the safe effected.

Mr. Morrison was also on duty in the early morning of May 30, 1942, and at four-eleven of that morning he received a call informing him that something was wrong at the liquor store at 25th and East "D" streets. He immediately went to the liquor store and found that an entry to the store had been made by picking a pane of glass out of the skylight. He further found that the screen below the skylight had been cut, and a rope attached to the screen hung down inside the store. An attempt had been made to "punch" the safe, but entrance to the safe had not been effected. Morrison found a complete set of burglar tools in front of the safe. Apparently Lieutenant Gregg of the Tacoma police force had arrived at the liquor store before Morrison, for when the latter arrived Gregg had Brehan in charge.

E. G. Weller, a merchant police, in making his rounds found the side door of the liquor store unlocked. He called

the police and Gregg answered the call. Weller and Gregg went into the building and found Brehan hiding under a desk in the office.

Eugene Ryan was called as a witness for the state, but refused to testify, on the ground that his testimony might incriminate him.

Carl Brehan was also called by the state, and testified that he was in the Sunshine Tavern in the early morning of May 29, 1942, and that Gene Ryan and appellant were with him; that they gained an entrance to the tavern by tearing off some boards at the rear of the building, after which they pushed Ryan through; that Ryan then unlocked the door, and appellant and Brehan went inside; that Harmon kept a lookout while the witness and Ryan worked on the safe. The witness further testified that they knocked the combination off with a sledge hammer, drove the spindles out with a punch, and rifled the safe; that each of the three men obtained about $120 in a division of the money taken from the safe. Brehan in his testimony also told how and where the three men met prior to the burglary, and how they watched and waited until the tavern was closed before attempting to make an entrance.

Brehan also testified that he was in the liquor store the morning of May 30, 1942, and that Ryan and appellant were with him on this occasion. After describing where the three men met and the circumstances of their waiting until the liquor store was closed, Brehan testified that Ryan went up the drain spout and made an entrance through the skylight, went down a rope to the inside of the building, and then opened the door and let appellant and Brehan in; that Brehan and Ryan worked on the safe and again appellant kept watch; that they got a punch stuck in the safe and were never able to effect an entrance. Brehan further testified that appellant and Ryan, without giving him any warning, left while he, Brehan, was working on the safe, and were not in the building when the officers came in and found him.

Brehan was arrested and confined in jail, where he remained for some months before he could procure bail. At the time of this trial, Brehan had not been tried for his par-

ticipation in these burglaries. It appears that Brehan had been convicted of two felonies prior to his arrest for the burglaries involved in this action. It also appears that Brehan had been confined some twelve days before he implicated Ryan and appellant in the burglaries.

Appellant, while on the stand, testified that he took no part in either of these burglaries, and that he was at home on both occasions referred to by Brehan. Appellant also called several witnesses, among them his wife, who testified that appellant was at home on both nights when the burglaries took place.

It also appears, in fact appellant admitted, that he had been convicted of three felonies prior to his arrest in connection with these burglaries. The last felony was a kidnaping charge, and appellant testified that the witness Carriker, to whom we shall later refer, was with him at the time of the kidnaping.

■ We shall now discuss the first assignment of error, which pertains to the claimed misconduct of the prosecuting attorney. There is nothing in the statement of facts which in any way tends to show that either the prosecuting attorney of Pierce county or any of his deputies ever requested the witness Ryan to claim his constitutional privilege to refuse to testify. It will be remembered that Ryan was first called by the state and at that time refused to testify, on the ground that it might incriminate him. He was thereafter called by appellant, at which time he was informed by the court and by his own counsel (not Mr. Johnson, who represented appellant) of his constitutional rights, and he again refused to testify. The only showing made which tends to sustain appellant's contention upon which this claim of error is based is found in the affidavits of Bertil E. Johnson and Stephen J. O'Brien. These affidavits were sworn to and filed January 29, 1944, and are contained in the transcript on file herein. They were made and filed in support of the motion for new trial; however, they are not referred to in the motion, and could not have been referred to, as the motion for new trial was filed January 20, 1944, while the affidavits were filed January 29th.

In *State v. Newell,* 148 Wash. 82, 268 Pac. 130, we quoted with approval the following statement from *Lee v. Northwest Trust & Sav. Bank,* 128 Wash. 214, 222 Pac. 489:

" 'In addition to this the affidavit in support of the motion for a new trial does not appear in the statement of facts, but only in the clerk's transcript. It has been repeatedly held that affidavits of this character, to be considered by us, must be brought here by bill of exceptions or statement of facts properly certified by the trial court.' "

In *State v. Wernitsch,* 105 Wash. 224, 177 Pac. 712, we stated:

"As to the motion for a new trial, it was based upon grounds which required it to be supported by affidavits. It appears that affidavits were used, at least they are found in the record here only in the transcript certified to by the clerk of the trial court. These the respondent moves to strike because they are not embodied in a statement of facts or bill of exceptions certified to by the trial judge. The motion must be granted. *Hendrix v. Hendrix,* 101 Wash. 535, 172 Pac. 819."

There is no question but that the showing which is necessary to be made to support this assignment of error is dependent upon affidavits which are not made a part of the statement of facts.

In the late case of *State v. Carlsten,* 17 Wn. (2d) 573, 136 P. (2d) 183, we stated:

"Finally, appellant contends that the court erred in not granting his motion for a new trial on the ground of misconduct of a juror. The assignment will not be considered since the affidavits in support of the motion have not been made a part of the statement of facts."

It is apparent that, because of the authority above referred to, we cannot consider the affidavits of Bertil Johnson and Mr. O'Brien, and that being true there is no basis for appellant's first assignment of error.

We may also state that on June 13, 1944, the prosecuting attorney filed in this court a motion to strike from the transcript these affidavits, which motion was granted by this court on August 25th, so, as the record now stands, there is

nothing in either the statement of facts or the transcript to support this assignment of error.

Appellant's second assignment of error is predicated upon the contention that he was restricted in the cross-examination of the witness Carl Brehan, and particularly by denying to him the opportunity of inquiring into the number and kind of crimes which Brehan had committed immediately prior to his arrest. In his brief, appellant states that he desired to inquire as to other crimes committed by Brehan immediately prior to his arrest only for the purpose of showing that a promise had been made to Brehan that, if he testified against appellant, Brehan would escape punishment. Appellant cites no authority to sustain this contention.

Counsel for appellant was permitted to inquire of Brehan in regard to all former convictions, and was also permitted to inquire of the witness in regard to any promise of immunity or leniency, if any, which had been made to him. Appellant was also permitted to inquire of Brehan whether or not he had been charged or tried for his participation in the burglaries with which we are here concerned. Brehan admitted he had not been tried, and denied that he was ever promised that if he testified he would escape punishment, but admitted that he was told by some of the officers that they would recommend leniency.

■ Rem. Rev. Stat., § 1212 [P. C. § 7723], provides that no person offered as a witness shall be excluded from giving evidence by reason of conviction of crime, but such conviction may be shown to affect his credibility.

Rem. Rev. Stat., § 2290 [P. C. § 8725], provides that every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but *his conviction* may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or by his cross-examination, upon which he shall answer any proper question relevant to the inquiry, and the party cross-examining shall not be concluded by his answer thereto.

Appellant attempted to inquire of Brehan, on cross-examination, whether or not he had been charged with certain crimes other than those involved herein. Objection to such question was sustained, although, as stated, counsel for appellant was permitted to ask Brehan whether or not he had been charged or tried for the burglaries with which we are here concerned.

We have been unable to find any authority which would permit asking a witness whether or not he had been charged with a crime or crimes claimed to have been committed by him, for the purpose of affecting his credibility, or for any purpose. The general rule is stated in Underhill's Criminal Evidence (4th ed.), p. 890, § 434, to be that the court should not permit a question to a witness as to whether he has ever been *arrested, incarcerated, accused, informed against, tried without being convicted, paid a fine, or indicted.* It is further stated that under the majority rule these facts are immaterial, since innocent persons may be arrested or indicted.

We have consistently followed the rule that states it is not proper to ask a witness if he has been charged with a crime.

In *State v. Arnold,* 130 Wash. 370, 227 Pac. 505, we stated:

"Proving that one has been charged with a crime is not permissible under the statute quoted [Rem. Comp. Stat., § 2290, which is the same as Rem. Rev. Stat., § 2290], nor is it admissible under any rule of law for the purpose of affecting the credibility of his testimony, because a perfectly innocent man may be so accused. . . . But the state contends that this cross-examination was made under such unusual circumstances as to justify it. It may be that the circumstances were unusual and such as would tend to provoke the examination, yet it cannot be held proper on that account."

The statement last above made was quoted with approval in *State v. Morgan,* 146 Wash. 109, 261 Pac. 777, and the rule followed.

We desire to call attention to only one additional case. In *Warren v. Hynes,* 4 Wn. (2d) 128, 102 P. (2d) 691, will be found the following statement:

"Courts and counsel should be mindful of the rule that evidence, even in a criminal case, may not be admitted of a criminal charge, but only of a previous conviction. The presumption should be conclusive that one is innocent of the commission of a crime of which he is accused until his guilt is proved."

We find no merit in this assignment of error.

Assignments of error Nos. 3 and 4 are discussed together in appellant's brief.

It will be recalled that it is claimed in assignment No. 3 that the court erred in sustaining the state's objection to the testimony of the witness Carriker concerning the threat against appellant, and assignment No. 4 relates to the refusal of the court to permit appellant to make an offer of proof that the witness Carriker, if permitted, would testify that Brehan had threatened to "get" appellant. This matter came up in this manner. When the witness Brehan was on the stand, the following questions were asked him on cross-examination by counsel for appellant:

"Q. And didn't you make a statement to Mr. Carriker— You know Mr. Carriker in Seattle? A. Yes, I know him. Q. Didn't you make a statement that you had had some difficulty with Harmon over some dice? A. No, I did not. Q. And that you were going to get him one of these days? A. No, I did not."

It will be noticed that in asking the above questions the witness was not informed of the time when or the place where such statement or statements were claimed to have been made, nor the circumstances surrounding their making.

James Carriker was thereafter called as a witness for appellant and asked the following questions:

"Q. In January or February of 1942, did you have any conversation with Carl Brehan, in which he made some statement concerning what he was going to do to John Harmon because of a purported dice game? A. Well— Q. Just a minute. MR. McCORMICK: We renew our objection. That is before the commission of this alleged crime. Harmon was not even on trial at that time, and it had nothing to do with this matter. THE COURT: That is January of 1942. That would be before the crime was committed. MR. McCOR-MICK: That is right, and it has no bearing on this case.

THE COURT: Objection sustained and an exception allowed.
MR. JOHNSON: That is all."

It will be noted that counsel for appellant made no offer to prove what Carriker, if permitted, would testify to. No offer to prove what Carriker would testify to was made until after appellant had rested his case, the state had indicated it had no rebuttal, and a recess was taken in order that the court might prepare its instructions. Then for the first time counsel for appellant stated:

"I will make the offer to prove by the witness Carriker that in January of—or in February of 1942, Carl Brehan told him that he had had difficulty with John Harmon on a dice deal, and that some day he was going to get him for it. That shortly thereafter Carriker was in Tacoma and told John Harmon of his conversation with Brehan, and advised him that he should look out, because Brehan had told him that some day he was going to get him."

The court refused to reopen the case and permit the offer of proof.

Whether the testimony of Carriker was attempted to be introduced for the purpose of impeachment or for the purpose of showing bias or prejudice of the witness Brehan, based upon prior inconsistent statements made out of court, it is necessary, before the impeaching evidence or the evidence by which it is attempted to show bias or prejudice can be introduced, that the attention of the witness be called to the contradictory statements, the time when and the place where they were made, and the circumstances surrounding the making. As to the necessity of laying such a foundation for impeachment, see *State v. Constantine,* 48 Wash. 218, 93 Pac. 317. As to the necessity for laying such a foundation before proof of former statements can be introduced to prove bias or prejudice, see Underhill's Criminal Evidence (4th ed.), p. 908.

We are clearly of the opinion that, by the questions asked Brehan, no proper foundation was laid in this case to thereafter permit prior inconsistent statements claimed to have been made by Brehan to be introduced either for the purpose of impeachment or for the purpose of showing bias,

prejudice, or animosity of Brehan toward Harmon at the time Brehan was testifying. It is not indicated that Brehan, at the time he testified, had any feeling of animosity toward Harmon, unless it be assumed that such a feeling was indicated by the claimed statement made to Carriker some four or five months before the crimes here being considered were committed, and almost two years before Brehan testified in this case.

■ We are of the opinion that it was within the sound discretion of the trial court to say whether or not the statement claimed to have been made by Brehan to Carriker was so closely related in point of time to Brehan's testimony at the trial as to indicate any bias, prejudice, or hostility on the part of Brehan toward Harmon at the time Brehan testified.

Wigmore on Evidence (3d ed.), vol. 2, p. 349, § 396, states:

"Where an emotion of hostility at a specific time is to be shown, the existence in the same person of the same emotion at another time is in general admissible. What that *limit of time* should be must depend largely on the circumstances of each case, and ought always to be left to the discretion of the trial Court."

"The extent of the inquiry as to interest or bias rests in the discretion of the trial court, and depends upon the particular situation developed at the trial." 70 C. J. 956, § 1162.

Appellant, while on the stand, was permitted to testify in regard to this dice game. The substance of his testimony is that, in January or February, 1942, Brehan met Harmon on the street where Brehan put up to Harmon the following proposition:

"And he put the proposition up to me to go up—at that time he was a member of the laborers union here in town, and he put the proposition up to me to go up to the laborers union and rook the working men out of their pay. He wanted me to stall for them while he switched dice, and I told him I would not go for it, and he got kind of mad at me for it."

Appellant admitted that Brehan never made any threats of any kind to him.

■ When we consider the indefiniteness of the time and what was claimed to have been said by Brehan, the relation

of these parties as shown by Brehan's testimony, and what seems to us the trivial nature of the occurrence which it is claimed forms the basis of Brehan's ill will toward Harmon, we are convinced that the trial court, in sustaining an objection to the question propounded to Carriker, did not abuse the discretion vested in it; neither did the trial court, in refusing to reopen the case to permit appellant to offer proof of what Carriker would testify to, abuse the discretion vested in it. No excuse or reason was shown why an offer of proof as to what Carriker would testify to was not made in an orderly way and while Carriker was on the witness stand. We have repeatedly held that it is within the discretion of the trial court to refuse or grant a motion to reopen a case for the purpose of permitting further testimony, and that we will not reverse the trial court, except for an abuse of such discretion. *State v. Pilegge,* 61 Wash. 264, 112 Pac. 263; *State v. Brown,* 62 Wash. 293, 113 Pac. 782; *Beadle v. Barta,* 13 Wn. (2d) 67, 123 P. (2d) 761.

We are convinced, after an examination of the record, that appellant had a fair trial in every respect. We are of the opinion that the trial court properly denied appellant's motion for new trial for the reasons herein assigned.

The judgment of the trial court is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.