222 P.2d 156

**STATE v. McCANDLESS.**

No. 7573.

Supreme Court of Idaho.

Sept. 13, 1950.

9

John W. Cramer Lewiston, for appellant.

Robert E. Smylie, Atty. Gen., J. R. Smead, Asst. Atty. Gen., Earle W. Morgan, Pros. Atty., Lewiston, for respondent.

PORTER, Justice.

Appellant has appealed to this court from a judgment of conviction of burglary in the first degree rendered against him in Nez Perce County on April 23, 1949.

On the night of February 8, 1949, officers of Nez Perce County, accompanied by offi-

cers of the State Fish and Game Department, seized and took into their possession two elk carcasses and hides and certain other articles. On February 9, the seized property, after being marked and tagged for identification, was placed for safe-keeping in the chill room of the plant of the Huggins Dairy Products in Lewiston. In connection with the seizure of such property, appellant and others were arrested for alleged violation of the game laws; and their trials were set to begin Wednesday, February 16, 1949.

On the night of Tuesday, February 15, 1949, the Huggins Dairy Plant was burglarized and the property in question was stolen and hauled away. Robert South, an employee of the Dairy, and one William J. Kennedy were arrested for the burglary and confessed, implicating appellant.

An information was filed against appellant, charging him with burglary in the first degree. Appellant entered a plea of not guilty. The jury brought in a verdict of guilty and judgment of conviction was entered thereon.

At the trial Robert South and William J. Kennedy testified, in effect, that appellant planned and instigated the burglary and aided and abetted the same, and paid them to commit the burglary, for the purpose of destroying the evidence in the cases involving violation of the game laws. It is undisputed that appellant went by airplane to Spokane, Washington, on February 15, and did not return to Lewiston until the latter part of the week.

By his first specification of error, appellant complains that there was no evidence tending to corroborate the testimony of the admitted accomplices, South and Kennedy, and that, therefore, the evidence is insufficient to sustain the judgment. Section 19-2117, I.C., provides: "A conviction can not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, it if merely shows the commission of the offense, or the circumstances thereof."

■ Corroboration of an accomplice need only connect the accused with the crime, it may be slight, and need only go to one material fact. It may be entirely circumstantial. State v. Mundell, 66 Idaho 297, 158 P.2d 818; State v. Gilbert, 65 Idaho 210, 142 P.2d 584; State v. Orr, 53 Idaho 452, 24 P.2d 679; State v. Brown, 53 Idaho 576, 26 P.2d 131; State v. Gillum, 39 Idaho 457, 228 P. 334.

State's witness, Valetha Inghram, is a sister of Robert South. At the time involved, she was keeping company with appellant although they were both married. She testified that about the 10th of February, 1949, appellant talked to her about the seizure of the elk meat and said, "Well, he said he bet — he said if this evidence

should disappear that they would have a hard time proving the case."; that about two days later he again talked to her and said, "He said that he bet if it was handled right that that meat could be gotten out of the cold storage locker."; that a day or two later he told her, "That the job could be done for $200."; that the day before Valentine's Day he remarked, "He said he wondered if Bobby could do the job."; that a short time later he said that "he had seen Bobby and that Bobby would do the job, and that he had a key"; that on February 15, appellant told her, "That he was going to Spokane."; and that on the day he came back from Spokane, he told her, "Well, he said that in this Hart case, that they didn't have anything to worry about if they just kept their mouths shut; that those pictures wouldn't hold up in court; and he said they didn't have anything to worry about; and anyway, he was in the clear; he was in Spokane."

The witness Robert South, referred to as Bobby, testified that he requested appellant to furnish some bolt clippers which South wished to use on the locks at the Dairy Plant in order to make it appear to be an outside job. State's witness, Kathleen South, wife of Robert South, testified that prior to the burglary, appellant brought a pair of bolt clippers, wrapped in a gunny sack, to their home. The evidence shows that the bolt clippers were used in connection with the burglary and were found where Robert South had hid them. Kathleen South also testified, in corroboration of the testimony of Robert South, that appellant brought William J. Kennedy to their home and introduced him to Robert South. Kennedy had a truck and was to do the hauling.

State's witness, Daisy B. South, the mother of Robert South, testified in corroboration of Robert South that appellant left $160.00 in an envelope with her for Bobby.

The foregoing evidence is amply sufficient to satisfy the statute requiring corroboration of the testimony of an accomplice or accomplices.

Appellant's second specification of error alleges misconduct on the part of the Prosecution in referring to elk meat trials' and articles in newspapers. An examination of the record discloses that at the beginning of his examination of certain witnesses, the Prosecutor, in order to fix the time, asked such witnesses if they had seen the articles in the newspapers immediately following the seizure of the elk meat and at the time of the elk meat trials. There were no references to the contents of the newspaper articles or to the subject matter of the trials. The questions of the Prosecutor were merely preliminary for the purpose of fixing in the minds of the witnesses the period of time from immediately preceding to immediately following the burglary. There was no misconduct on the part of the Prosecuting Attorney in this respect and no prejudicial error committed.

By specification of error No. III, appellant urges, "That the court erred in sustain-

ing State's objection to inquiry concerning conversations with the appellant on or about February 10, 1949," and relies upon the following cross-examination of witness, Valetha Inghram:

"Q. How long have you been in Lewiston. A. I got here about the 8th or 9th of November.

"Q. And how long after that time did you first start keeping company with the defendant? A. It was after Christmas.

"Q. You say you have known him for about twenty years? A. Yes.

"Q. Now, you said your first conversation with him, — it was fixed about the 10th of February. A. Yes.

"Q. To the best of your recollection? A. To the best of my recollection.

"Q. And I believe you said it was at his landlord's residence? A. Yes.

"Q. Did you give the address? A. 624 — 9th Avenue, I believe.

"Q. Did he have an apartment there? That was at his apartment? A. Yes.

"Q. What time of day was that?

"Mr. Morgan: I will object to any further inquiry as to the place, on the ground that her answers thereto might incriminate the witness on another matter.

. "Mr. Cramer: Well, that's for the witness to claim that; not for the attorney.

·"The Court: That's for the witness; If she wants to claim that herself.

"The Witness: Well, I would rather not answer it, your Honor. It might incriminate me in another case.

"The Court: I will sustain the objection. If you think it will incriminate you you don't have to answer.

"The Witness: Thank you.

"Mr. Cramer: Well, just a minute. May I ask if she makes that objection?

"The Court: Yes.

"Q. Do you make such objection. A. Yes.

"Q. That the answer to that question might incriminate you? A. Yes, on another matter."

Appellant apparently assumes an objection by the State to the conversation itself. There were no objections by either the State or the witness as to what the conversation was. The question before the witness was, "What time of day was that?" The State objected to any further inquiry as to the "place" of the conversation on the ground that the answers of the witness might incriminate her on another charge. The witness had already located the place of the conversation as the apartment of appellant in Lewiston.

The objection of the State was not sustained by the court but the court did sustain the objection of the witness. It appears from the record that the witness was in jail on an undisclosed charge at the time of the trial. Appellant does not contend in his brief that the witness did not have the constitutional right to refuse to answer

on the ground that her answer might incriminate her on another matter. Furthermore, immediately thereafter, the cross-examination was pursued as follows:

"Q. Do you remember what day of the week that first conversation took place? A. No, I don't. I don't remember what day it was.

"Q. Do you remember the time of day? A. Not definitely, no.

"Q. Well, was it in the morning or afternoon or evening? A. I don't just recall what time of the day it was."

Appellant appears to contend that by these proceedings it was made impossible for the jury to determine whether or not the witness, Valetha Inghram, was an accomplice whose testimony would have to be corroborated. There is nothing in the quoted proceedings or elsewhere in the record warranting such contention.

By specification of error No. IV, appellant urges that the evidence is insufficient to support the judgment because the information charges that appellant "then and there * * * entered the building of Huggins Dairy Products" while it is undisputed that appellant was in Spokane at the actual time of the commission of the burglary. This contention of appellant is answered by Section 19-1430, I.C., reading as follows: "The distinction between an accessory before the fact and a principal and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal." See State v. Ayres, 70 Idaho —, 211 P.2d 142.

No reversible error being made to appear, it follows that the judgment of conviction must be and is hereby affirmed.

GIVENS, C. J., and TAYLOR and KEETON, JJ., concur.

HOLDEN, C. J., sat at the hearing but resigned prior to decision.