[Crim. No. 3012.   First Dist., Div. Two.   Oct. 28, 1954.]

THE PEOPLE, Respondent, v. JAMES HINES, Appellant.

Nathan C. Coghlan for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

DOOLING, J.—This is an appeal from a judgment of conviction for violation of section 11714 of the Health and Safety Code (furnishing narcotics to a minor) and from a denial of a motion for new trial.

Miss Strange, who was born on April 24, 1935, testified that she met the appellant James Hines in the early part of 1952. The meeting took place at the President Hotel and she was introduced to him by James Caswell, her husband, who is presently an inmate of the State Prison at San Quentin. The purpose of the visit to this hotel was to get some heroin from Hines. He supplied some and she immediately prepared and injected it into her vein in the hotel room. At the same time Hines also took a "fix" (an injection of heroin). Miss Strange stated that she received heroin 10 or 12 times from Hines. She purchased heroin from Hines at Mel's Drive-In, Bob's Steak House, and on the street.

No samples of heroin were introduced at the trial but Miss Strange testified that the material she purchased and injected into her vein was heroin. She stated she had been taking heroin daily for two and a half years. She described how it is prepared for injection, the equipment used, the feeling one has when in need of it, and the relief obtained by injection.

Dr. Daniel McGettigan, who qualified as an expert witness on the subject of drug addiction, testified that patients can recognize when a substitute narcotic is injected in place of heroin. He stated how it is used, prepared, injected, its effect on the user, and the withdrawal symptoms.

Hines denied ever seeing Miss Strange at any of the places mentioned by her, supplying her any heroin or ever taking heroin himself. He only admitted seeing her twice, in an automobile and in a place called the Hunter Club. He denied living at the President Hotel in the months of January, February or March, 1952, but one of the hotel owners testified that to his knowledge Hines was a guest of the hotel in early 1952.

Caswell, Miss Strange's incarcerated husband, testified that Hines never sold him or his wife any narcotics in his presence. He was impeached on cross-examination by admitting several prior felony convictions.

■ Appellant argues that the trial court erred in allowing Dr. McGettigan's testimony over defendant's objection and therefore it was also error to instruct the jury as to the testimony of experts. As already stated the doctor testified extensively on the preparation, use and effect of the narcotic heroin. Appellant argues that since it was not disputed that heroin is a narcotic, such testimony was unnecessary and prejudicial because it stressed the terrors of addiction and difficulty of cure.

In *People* v. *Candalaria*, 121 Cal.App.2d 686 [264 P.2d 71] similar testimony of the complaining witnesses as to the manner of injecting the substance obtained from the defendant and its effect upon them from which they concluded that the substance was heroin was supported by the testimony of an expert on those matters which ''corresponded very closely'' to their testimony. (P. 688.) The court commented (p. 689):

''Ordinarily, the character of such substance is proved by a trained expert who has made a chemical analysis thereof. Here no such proof was offered because none of the powder was available for analysis. This, however, is not fatal to the People's case for the corpus delicti may be proved by circumstantial evidence.''

The situation in our case was identical. The jury was in no position as a matter of common knowledge or ordinary experience to evaluate Miss Strange's testimony as to the use of heroin and its effect on the user. This being so it was a proper case for expert testimony (*George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834, 843-844 [205 P.2d 1037]; *Manney* v. *Housing Authority*, 79 Cal.App.2d 453, 459 [180 P.2d 69], to corroborate the testimony given by the complaining witness. The evidence having been properly admitted it was equally proper for the court to instruct the jury on the subject.

Appellant claims that the court erred in refusing to allow his counsel to cross-examine the witness Matexas, one of the owners of the President Hotel, on the matter of arrests made at the hotel. The witness stated that the appellant was a guest at the hotel in early 1952 and appellant testified that he was not living at the President Hotel during January, February and March, 1952.

On cross-examination Matexas testified that he kept hotel records but did not have any for the year 1952. An objection was made and sustained to the question, "You have had an arrest in your hotel for prostitution, haven't you" and at that time appellant's counsel made no argument on the competency and relevancy of this question. Now on appeal he argues that this question was designed to bring out the fact that the witness was in a position where it was desirable for him to "curry favor" with the police, and therefore it was error not to allow the witness to answer the question.

Respondent takes the position that since a witness cannot be impeached by evidence of particular wrongful acts (Code Civ. Proc., § 2051), the court was justified in sustaining the objection in the absence of any showing by appellant why the question was proper. With this we agree. The question was prima facie objectionable and it was therefore incumbent upon appellant's counsel to advise the court of the theory upon which he deemed it proper.

Appellant argues that it was error to allow the State to impeach its own witness, a Miss Tina Singh, on the ground of surprise because she denied knowing Hines or Miss Strange on the witness stand.

Miss Tina Singh, a witness for the People called in rebuttal upon being asked if she knew Hines or Miss Strange answered in the negative. She admitted that she had talked to the district attorney and two other officers twice before, but upon being questioned as to the conversation that transpired she was vague and uncommunicative. Thereupon the district attorney stated he was surprised and began asking leading questions. Objection by the defense was overruled by the court on the ground that it was proper impeachment of the witness because the surprise was "obvious." She ultimately admitted having seen Hines once before but not knowing him. Miss Strange was recalled to the stand and testified that she knew Miss Singh, that she worked as a prostitute at the Annex Hotel, that Hines picked her up there at night, and that the three of them had gone to Mel's Drive-In together.

Under Code of Civil Procedure, section 2049, a party producing a witness may impeach him by showing that he has made statements at other times inconsistent with his present testimony. However, it is also necessary that the witness' testimony be prejudicial to the party's case and that

he is surprised thereby, and the mere failure to give favorable testimony for the party producing him is not enough to allow impeachment. (27 Cal.Jur. 173, 174.)

On the element of surprise the court in *People* v. *Flores*, 37 Cal.App.2d 282, 286 [99 P.2d 326] stated the proper procedure to be as follows: "Upon being taken by surprise by such a witness, counsel may, upon announcing surprise, ask leave to examine the witness by leading questions, or in other words, to cross-examine the witness; but the asserted surprise must be genuine. Opposing counsel may dispute the alleged surprise, thereupon raising an incidental or collateral issue, which necessarily must be disposed of by the trial judge."

In this case the trial judge determined this fact immediately by his comment "The surprise is obvious," and counsel for appellant made no objection to this ruling. The witness Singh was obviously called by the prosecution to contradict the appellant's testimony that he did not know Miss Strange. He had been asked on cross-examination if he had not been at Mel's Drive-In with Clarissa Strange and the Singh girl and answered: "No."

While ordinarily the mere failure to give expected testimony does not constitute the "surprise" which justifies the impeachment of a witness by the party calling him (*People* v. *Newson*, 37 Cal.2d 34, 41 [230 P.2d 618]) here the witness' denial that she knew either Miss Strange or appellant was, in effect, affirmative testimony corroborating appellant's denial that he had been with the witness and Miss Strange at Mel's Drive-In. It falls therefore well within the exception announced in *People* v. *LeBeau*, 39 Cal.2d 146 [245 P.2d 302] and *Bassett* v. *Crisp*, 113 Cal.App.2d 295 [248 P.2d 171]. These cases support the rule that where the negative testimony is in fact corroborative of an opponent's witness the party surprised by it may impeach his own witness.

There is no merit in appellant's contentions that this witness was not impeached by the evidence of any other witness as to prior inconsistent statements or that it was error to permit the complaining witness to impeach her by testifying to facts showing her acquaintance and association with appellant and the complaining witness. Taking the second objection first "a witness may be as effectively contradicted by direct adverse testimony of other witnesses as by facts stated by him on cross-examination." (27 Cal.Jur., Wit-

nesses, § 123, p. 149.) ▉ As to the other objections a witness may always be questioned as to prior inconsistent statements in the good faith effort to discredit him by his own admissions on cross-examination. (27 Cal.Jur., Witnesses, § 133, pp. 159-160.)

We cannot say that it was improper to instruct the jury that a witness may be impeached by evidence that he has at other times made statements inconsistent with his present testimony. While in the main Miss Singh denied making any prior inconsistent statements, after first testifying positively that she had never *seen* the appellant she afterwards admitted: "I said I have seen him. I didn't say I knew him personally."

▉ Appellant next argues that an instruction that operated as a guide for the jurors in approaching their task as triers of the fact was incorrect because "it was confusing and permitted deference to mental or educational superiority of one juror over another in the finding of a verdict."

The instruction reads: "You (the jurors) should of course have an individual opinion. Provided of course, always that there is a disagreement among you, and after you have had your deliberations you come to the conclusion that your original opinion was *not as exact and not as logical and not as well founded as the opinion of another juror,* or other jurors on the jury, *then you will not hesitate to change your own opinion.* You do not have an arrogance and a pride in your opinion that will not permit you to listen to the reasoning of your fellow jurors and to adopt that reasoning *provided that you find it more exact and more logical and more sound than your own.*" (The language emphasized is that found objectionable by appellant.)

A reading of the instructions on the duty of jurors in the entirety demonstrates the invalidity of this objection. The jury was told that the defendant was entitled to the individual opinion of each juror and that they should not change it merely because others have come to a different conclusion. But if a juror was satisfied that his first opinion was wrong, he should not hesitate to change it. Then follows the instruction complained of. We find no prejudicial error in this instruction.

Finally, appellant argues that the trial court erred in failing to redetermine the issue of fact presented to the jury in passing on the motion for a new trial made by appellant. The trial judge stated that he relied on the findings of the

jury in arriving at his decision and did not feel justified in reexamining the testimony from the standpoint of credibility. He felt the court could only set aside testimony of witnesses when for some reason it was improper.

Respondent is in accord with appellant's contention and recommends that this court return this case to the trial court for a rehearing of the motion for a new trial.

In *People* v. *Robarge,* 41 Cal.2d 628, 633 [262 P.2d 14] the court stated the general rule to be that while it is the exclusive function of the jury to find the facts, "the court, on motion for a new trial, should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict . . . it (the court) should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict."

The judgment and order denying a new trial are vacated with directions to rehear the motion for new trial in accordance with the rule announced in *People* v. *Robarge, supra.* If a new trial is denied the trial court shall again pronounce judgment on the defendant. The times limited for these actions by the Penal Code shall run from the filing of the remittitur in the superior court.

Nourse, P. J., and Kaufman, J., concurred.