385 P.2d 246

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Carlos BASSETT and Buell Warner, Defendants-Appellants.**

**No. 9161.**

Supreme Court of Idaho.

Aug. 9, 1963.

Rehearing Denied Sept. 19, 1963.

John R. Black, Pocatello, for Carlos Bassett.

Louis F. Racine, Jr., Pocatello, for Buell Warner.

280

Allan G. Shepard, Atty. Gen., R. La Var Marsh, Asst. Atty. Gen., Boise, Eugene L. Bush, Pros. Atty., Idaho Falls, for respondent.

KNUDSON, Chief Justice.

The information in this case charged that on or about the 11th day of June, 1961, appellants (defendants) did wilfully, intentionally, feloniously and unlawfully take, steal and carry away certain personal property belonging to another, to-wit: a Hereford steer of the value of more than $60.00 lawful money of the United States and the personal property of one A. C. Olson, with the intent then and there to permanently deprive the said A. C. Olson of his said property.

Following a trial the jury returned a verdict finding each of the defendants guilty of grand larceny as charged in the information. Appellant Warner was sentenced to serve not more than ten years and appellant Bassett was sentenced to serve not more than five years in the Idaho State Penitentiary. Said sentence as to appellant Bassett was suspended subject to the terms of the court's Order of Probation dated and filed February 8, 1962, which provides, inter alia, "that said defendant shall pay the costs involved in the prosecution of this action in the amount of $677.74" and "that the defendant shall serve 60 days in the Bonneville County jail, which sentence shall be served at any time during this probation."

Appellants regularly filed their joint motion for a new trial which was denied. This appeal is from the judgments of conviction and the order denying appellants' motion for a new trial.

A substantial portion of the State's evidence consisted of the testimony of one Allen Eugene Beckstead, an admitted accomplice. Appellants state that their main contentions on this appeal are (1) that the evidence is insufficient to show a proper corroboration of Beckstead's testimony and (2) that the verdicts of guilty were the result of erroneous and misleading instructions.

We shall first consider appellants' contention that the State failed to corroborate the testimony of accomplice Beckstead which contention is involved in assignments of error Nos. 1, 2, 7 and 8.

I.C. § 19–2117 provides:

*"Testimony of accomplice—Corroboration.*—A conviction can not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of

the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

■ It is not necessary that there be corroborating evidence concerning every material fact as to which the accomplice testified. The statute permits convictions upon the testimony of an accomplice with the limitations that the accomplice shall be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and hence the corroborative evidence must be independent of the testimony of the accomplice and connect or tend to connect the defendant with the commission of the crime charged. State v. Brake, 99 Or. 310, 195 P. 583; State v. Gillum, 39 Idaho 457, 228 P. 334; State v. Proud, 74 Idaho 429, 262 P.2d 1016; State v. Orr, 53 Idaho 452, 24 P.2d 679. Corroboration of an accomplice need only connect the accused with the crime, it may be slight, and need only go to one material fact. It may be entirely circumstantial. State v. McCandless, 70 Idaho 468, 222 P.2d 156. The jurors are the judges of the weight and credibility of the testimony under proper instructions.

■ It would unduly extend this opinion to attempt a detailed statement of the State's evidence in this case, however following are some facts and circumstances which were established by evidence independent of that given by accomplice Beckstead, from which the jury could reasonably conclude the appellants were connected with the commission of the crime.

The steer involved in this case was killed on what is referred to as the Klossner ranch. The hide and other remains were found by Earl Sibbetts on Tuesday morning, June 13, 1961, approximately 20 miles east of the Klossner ranch in a secluded area not visible from the roadway. It is undisputed that the hide bore A. C. Olson's brand. Mr. Sibbetts testified that there had been only one rain storm in that area between the 5th and 13th of June, which occurred the morning of June 12th; that when found on the ground, the irregular depressions in the hide were filled with water, which would fix the time of death of the animal as being prior to the rain storm which occurred on the morning of June 12th. A Hereford steer answering the description of the one involved had been seen grazing on the Klossner ranch a comparatively short time before June 11th. The witness Beckstead was employed by Klossner and on June 6, 1961, Mr. Klossner employed a neighbor, Tom Smith, to work with Beckstead mending fences. Mr. Klossner left his truck in Beckstead's possession for their use. The truck was identified as a 1959 Ford ¾ ton turquoise colored pickup, equipped with a metal stock-rack. Mr. Sibbetts testified that

he and Beckstead were never separated between the 6th and 10th of June at 2:00 P.M., except on one occasion for a period of 2½ hours. Paint scrapings taken from a hoof (part of the remains of the steer) and scrapings from the Klossner pickup were compared by the Federal Bureau of Investigation and found to be identical. Impression of a pneumatic tire found in the earth at the Klossner ranch at the spot where the steer was killed compared with the impression of one of the tires on the Klossner pickup and was found to be identical in rib-width and tread design. From these facts the jury could reasonably conclude that the animal was killed after 2:00 P.M. on June 10th and that the Klossner pickup was used to transport the dead steer from where it was killed to the area where its remains were found.

A number of witnesses testified that they observed the witness Beckstead at different times between 2:00 P.M. Saturday, June 10th and 1:00 P.M. June 11th from which the jury could reasonably conclude that the only opportunity Beckstead had to use the truck in the commission of the crime was Sunday afternoon, June 11th.

It is undisputed that the appellants and Beckstead were in the South Fork Lodge in Swan Valley, which was being operated by appellant Warner, at 1:00 P.M. on June 11th. The testimony of appellants and accomplice Beckstead is conflicting as to the time they left the Lodge—appellants contend that they did not leave until 5:00 P.M. and Beckstead testified they left at 1:30 P.M. to poach deer or elk on the Klossner ranch and after having shot the steer they returned to the Lodge at sunset. It is undisputed that the three men, appellants and accomplice Beckstead, were seen by three boys in the Klossner pickup at about 3:45 P.M. Sunday, June 11th, six or eight miles from the Klossner ranch; that the boys had a conversation with them in which deer and elk were mentioned. At approximately 5:45 P.M. the same day said boys, while in a cabin on the Klossner ranch, heard the truck, occupied by the three men, stop nearby where its occupants carried on a short conversation among themselves and then drove away. Evidence was introduced to the effect that because of the condition of the country roads a round trip between the Lodge and the Klossner ranch would require approximately four hours. The foregoing evidence is amply sufficient to satisfy the statute requiring corroboration of the testimony of accomplice.

Appellant Bassett contends that his motion to dismiss and motion in arrest of judgment should have been granted for the reasons (1) that the district court at Bonneville County did not have jurisdiction and (2) that there was no evidence of criminal intent on his part.

Evidence was introduced that during Sunday afternoon, June 11th, Beckstead and Warner decided to drive to the Klossner ranch to poach deer or elk; that Warner placed his rifle, a knife and tarpaulin in the truck and invited Bassett to go along. Enroute the truck broke down and while they were repairing it the three boys hereinbefore mentioned drove up and stopped. During a conversation with the boys inquiry was made of them as to whether they had recently seen deer or elk in the area. That after the truck was repaired they proceeded to the Klossner ranch and looked for deer and elk. Being unsuccessful in one area they drove toward Homer Creek, the area where the steer was shot. When they were approximately 40 feet from the steer, Warner told Beckstead to stop the truck immediately following which Warner shot the steer. Each of them, appellants and Beckstead, helped to load the undressed dead steer into the Klossner truck; they then drove to the secluded area where the steer was dressed, following which they took the meat to the South Fork Lodge in Swan Valley, Idaho. The steer was shot on Klossner's ranch in Bingham County and transported in the truck to the Lodge in Bonneville County.

"Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another." I.C. § 18-4601.

I.C. § 19-309 provides:

"When property taken in one county by burglary, robbery, larceny, or embezzlement has been brought into another, the jurisdiction of the offense is in either county. * * *"

■ The intent required is the intent to deprive the owner of his property. Such intent must exist at the time of the wrongful taking or stealing. State v. Hopple, 83 Idaho 55, 357 P.2d 656; State v. Huskinson, 71 Idaho 82, 226 P.2d 779.

Principals in the commission of a crime are defined by I.C. § 18-204, the pertinent portions of which are:

"All persons concerned · in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, * * * are principals in any crime so committed."

■ Evidence was introduced from which the jury could have believed that appellant Bassett aided in loading the steer in the truck, dressing it out and in transporting it to the South Fork Lodge with the intent to deprive the owner of his property. Such evidence was sufficient to establish appellant Bassett as a principal within the meaning of said statute. As a principal he could have been lawfully tried in either Bingham or Bonne-

ville county under the authority of I.C. § 19–309.

Appellants contend that the trial court erred in sustaining State's objections to questions propounded to accomplice Beckstead, during his cross-examination. The court sustained timely objections to the following quoted questions which were put to the witness succession:

"Q. Did it [sentence of 90 days] have anything to do with your having committed any other offenses other than leaving the state?"

"Q. Have you been convicted of any other charges while you have been in jail?"

"Q. Do you have any other charges pending against you at this time?"

"Q. I think you said you had talked to the Sheriff's office a number of times while you have been down there. Have you in your assisting them with this case been promised any further probation or immunity in the case by the Sheriff's office?"

Beckstead had already testified that he had been convicted of the crime of grand larceny of the steer in question and had been put on probation, but that he had violated probation by leaving the state so that at the time of trial, was in jail.

▉ Counsel for appellants contend that the questions were proper to show

that Beckstead had been convicted of other felonies. They rely upon I.C. § 9–1209, which provides:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

This statute applies to both civil and criminal actions. State v. Kleier, 69 Idaho 278, 206 P.2d 513. We have previously held that the fact a witness has been convicted of a misdemeanor is not admissible under this statute. State v. Scott, 72 Idaho 202, 239 P.2d 258; State v. Alvord, 46 Idaho 765, 271 P. 322. Under the identical statute it has been held that the fact one has been arrested or charged with an offense is likewise inadmissible. People v. Quinn, 111 Cal.App. 614, 295 P. 1042; People v. Hines, 128 Cal.App.2d 421, 275 P.2d 585; State v. Harmon, 21 Wash.2d 581, 152 P.2d 314.

By the express terms of the statute, evidence of particular wrongful acts, except convictions of felonies, is improper for impeachment purposes.

▉ Counsel additionally contends that I.C. §§ 19–2117 and 9–1209, when read to-

gether, entitle appellants to establish that an accomplice is corrupt and has received clemency because he has turned State's evidence. It is not obvious from a mere reading of the questions that counsel intended to prove the witness Beckstead had received clemency and was therefore corrupt. No offer of proof was made at the time the objections were sustained which would in any manner call the court's attention to such theory of the questions. Undoubtedly the court sustained the objections on the theory that they were improper for impeachment purposes under the statute. The questions were too broad. The ruling having been proper on one theory, it is not available to appellants as error, in the absence of an offer of proof which shows it should be received, on some other theory. Hughes v. Hudelson, 67 Idaho 10, 169 P.2d 712.

■ Appellants assign as error the giving of instructions numbered six, eight and twenty-two, hereafter quoted.

Instruction No. six:

"You are instructed that in all criminal cases, the defendant is presumed to be innocent until his guilt is established by legal and competent evidence, beyond a reasonable doubt, and the burden of proving guilt is upon the prosecution, and such burden never shifts from the state to the defendant, but rests upon the prosecution through-out the trial; and, in case you have a reasonable doubt as to a defendant's guilt, you should acquit him."

Instruction No. eight:

"You are instructed, as a matter of law, that the doubt which a juror is allowed to retain in his own mind, and under the influence of which he should frame a verdict of not guilty, must always be a reasonable doubt. A doubt produced by undue sensibility in the mind of a juror, in view of the consequences of the verdict is not a reasonable doubt, and the juror is not allowed to create sources or materials of doubt by remote conjectures as to possible status of the case different from those established by evidence. You are not at liberty to disbelieve as jurors if from the evidence you believe as men. Your oath imposes upon you no obligation to doubt when no doubt would exist if no oath had been administered; and in considering the case the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural. A doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation of all evidence in the case; and unless it is such that were the same kind of doubt interposed in the graver transactions of life, it would

cause a reasonable and prudent man to hesitate and pause, it would not be sufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say that you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt."

Appellants contend that said instructions are confusing, argumentative, prejudicial and impose on appellants the burden of establishing their innocence.

It may be conceded that these are not model instructions, however other instructions containing substantially the same language have been approved by this Court. State v. Moon, 20 Idaho 202, 117 P. 757; State v. Nolan, 31 Idaho 71, 169 P. 295; State v. Gilbert, 8 Idaho 346, 69 P.2d 62; State v. Lyons, 7 Idaho 530, 64 P. 236.

Instruction No. twenty-two:

"You are instructed that in order to sustain a conviction based solely on circumstantial evidence, the circumstances must be consistent with the guilt of the accused and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt. However, this rule operates only on the facts found by the jury and not on mere items of evidence adduced, and only those facts essential to a conviction need be incompatible with any reasonable hypothesis of innocence. The evidence need not demonstrate the guilt of the defendant beyond the possibility of his innocence, and if the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible, on any reasonable hypothesis, with the innocence of the accused; that is, if the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt; in other words, if they are inexplicable on the theory of innocence a conviction is warranted."

The language contained in this instruction was taken verbatim from State v. McLennan, 40 Idaho 286, 231 P. 718 wherein the language was used as a statement of the law on circumstantial evidence by the court in its determination of whether or not the record contained sufficient evidence to justify submitting the question of defendant's guilt to the jury.

Appellants argue that in the cases of State v. Hix, 58 Idaho 730, 78 P.2d 1003 and State v. Taylor, 59 Idaho 724, 87 P. 2d 454, this Court criticized instructions encompassing substantially the same language as being confusing and prejudicial. With this contention we do not agree. The instructions held to be erroneous in said cases contained other objectionable

language not contained in instruction No. twenty-two. State v. McLennan, supra, has been cited with approval as late as 1949 in State v. Davis, 69 Idaho 270, 206 P.2d 271.

Appellants contend that the term "incompatible" used in instruction No. twenty-two should be replaced with the term "irreconcilable". Notwithstanding the fact that the Court used the word "irreconcilable" in the State v. Davis case (supra) the terms are synonymous. Webster's New International Dictionary, 2nd Edition, 1959; Roget's International Thesaurus, 3rd Edition. We do not consider the instructions discussed as constituting reversible error.

Appellants complain of the court's refusal to give their requested instruction No. four, which states:

"You are instructed that the defendants cannot be convicted upon insinuations and innuendo, but that the facts or circumstances in evidence must convince you beyond a reasonable doubt that the defendants are guilty of the offense charged in the information, and if you are not so convinced, your duty is to acquit."

The court refused the instruction upon the ground that it had been covered by other instructions given. Although we do not find a specific instruction encompassing substantially the same language, we are satisfied that other instructions given on the burden of proof and quantum of evidence required in order to justify a conviction fully cover the subject of this requested instruction. The trial court's instructions when considered as a whole substantially state the applicable law.

Appellant Warner was sentenced to serve not more than ten years in the Idaho State Penitentiary and he contends that such sentence is extreme and excessive. The maximum prison term for grand larceny is 14 years. I.C. § 18–4606. This Court has stated that ordinarily punishment within the limits prescribed by statute is not excessive and that the discretion vested in the trial court in fixing punishment within the limits prescribed by law will not be reviewed or revised except where such discretion is abused. State v. Weise, 75 Idaho 404, 273 P.2d 97; State v. Farnsworth, 51 Idaho 768, 10 P.2d 295. It is clear from the record that the trial court considered Warner as the person primarily responsible for the commission of the offense involved. The court was aided by a pre-sentence investigation and we cannot say that the court abused its discretion in this regard.

Appellant Bassett contends that the taxing of costs against him in the amount of $677.74 as a condition of probation is unlawful because no cost bill or memoran-

dum of costs was filed. Paragraph 4 of the Order of Probation provides:

"That said defendant shall pay the costs involved in the prosecution of this action, in the amount of $677.74."

Appellants' praecipe requested the clerk of the district court to include any cost bill or memorandum of costs together with the court's order to pay costs, in the record on appeal. The clerk's certificate does not specifically state that the order to pay costs was included in the record. However it does state that the record "includes all documents, records, files and papers which were before the court and used and considered by the court in the trial and determination of said cause." Although no cost bill appears in the record on appeal, it is stated in respondent's brief that a cost bill was filed February 8, 1962. (The verdict is dated and was filed January 26, 1962.)

I.C. § 19-4703 provides:

"*Judgment for costs.*—At the close of every trial for any offense against the laws of this state the costs thereof shall be paid as by law provided, but by way of indemnity to the county the whole amount of such costs, including the costs of examination if such shall have been had, in cases wherein the accused is convicted, shall be taxed against the convicted per-

son, and judgment shall be rendered accordingly by the court before which such person shall have been convicted, and such judgment may be enforced in the same manner as judgments in civil cases."

The foregoing quoted statute directs that the costs "shall be taxed against the convicted person." From this record we are unable to determine if or when the costs referred to were taxed or if appellant had opportunity to challenge the items taxed. Such costs must be so taxed that the judgment therefor may be enforced as in said statute provided. (State v. Montroy, 37 Idaho 684, 217 P. 611.) Under the existing circumstances it is necessary to remand this cause to the trial court.

There is no merit to the contention of the appellant Bassett that the provision contained in the Order of Probation requiring him to serve 60 days in the Bonneville County jail at any time during the two year term of probation, is void for indefiniteness. It is not a sentence. It is merely a condition of probation which may be performed within the period specified, at the election of said appellant.

The cause is remanded to the trial court with directions to consider and determine if costs were properly taxed against appellant Bassett and to make appropriate

**290**

findings and order in connection therewith. In all other respects the judgments are affirmed.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.

### ON DENIAL OF PETITION FOR REHEARING

KNUDSON, Chief Justice.

Petitioner Buell Warner vigorously contends that instruction No. 22 was prejudicial and confusing, contending that "it takes away the defendants' right to rely on the presumption of innocence and the law that he need not prove his innocence." We agree that a portion of this instruction is subject to criticism as being to some extent confusing and for that reason should not be used. We do not agree that in this case it was reversible error.

By the language used in no less than four other instructions, which were given by the trial court, the jury was specifically and repeatedly instructed that the defendant is presumed to be innocent through all the stages of the trial until proved guilty beyond a reasonable doubt; that such presumption is an initial, substantive part of the law and may not be disregarded.

Petition for rehearing is denied.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.